833 A.2d 1087

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. LARRY D. WILSON, A/K/A ROBERT SMITH,
IWA, DEFENDANT–RESPONDENT.

Argued October 8, 2003—Decided November 3, 2003.

*Jafer Aftab,* Deputy Attorney General, argued the cause for appellant (*Peter C. Harvey,* Attorney General of New Jersey, attorney; *Bennett A. Barlyn,* Deputy Attorney General, of counsel and on the brief).

*Mark H. Friedman,* Assistant Deputy Public Defender, argued the cause for respondent (*Yvonne Smith Segars,* Public Defender, attorney).

Justice VERNIERO delivered the opinion of the Court.

This is a search-and-seizure case. We granted certification to determine whether the State has satisfied its burden of demonstrating the validity of a warrantless automobile search. The State advances some legitimate arguments to justify its conduct. However, our review of the trial court's suppression hearing leads us to conclude that the State submitted insufficient factual proofs at that hearing to support its current position. Under those circumstances, we hold that the Appellate Division properly suppressed the fruits of the search.

I.

On February 20, 1999, at approximately 12:26 a.m., two municipal police officers in a marked police car were patrolling the area of Union Avenue and Jasper Street in the City of Paterson. One of the officers observed a vehicle coming from his left on Union Avenue. The vehicle approached the intersection of the two streets to turn left. The officer's position allowed him to see into the interior of the vehicle's passenger side. The officer recognized the passenger, whom he knew as Robert Smith, and who later was identified as defendant Larry Wilson. The officer believed that there were outstanding arrest warrants for contempt against defendant.

The vehicle turned onto Jasper Street, proceeding approximately four car lengths before parking on the side of the street. The officers drove through the intersection and, as they pulled up behind the vehicle, they observed defendant exiting. There is no

indication in the record that defendant was aware of the police presence. One of the officers was able to obtain a better view of defendant that confirmed the officer's belief that defendant was the person for whom the warrants had issued.

The officer called to defendant who responded by walking toward the officer. The officer arrested defendant based on the warrants. Defendant had his hands inside his jacket sleeves, impeding the officer's ability to handcuff him. Reacting to that circumstance, the officer directed defendant "to push his hands through [the jacket sleeves]." In compliance, defendant pushed his right hand through the sleeve and, in so doing, a small bag of what appeared to be marijuana dropped to the ground. Defendant "blurted" to the officer that the substance contained in the bag was, in fact, marijuana.

The officer then directed defendant to push his left hand through his jacket sleeve. In complying with that directive, defendant caused another bag to fall to the ground. That bag contained six smaller packages of what the officer believed was cocaine. The officer handcuffed defendant, placed him in the back of the patrol car, and retrieved the suspected drugs from the ground. The officer next turned his attention to the vehicle's driver whom he had never seen before that night. The driver had already exited the vehicle when the officer asked him for his driving credentials. In response, the driver furnished valid credentials.

While that officer questioned the driver, the other officer retraced defendant's path between the vehicle's passenger side and the police car to determine whether defendant had discarded any additional drugs on the ground. The officer found nothing. The officer then opened the unlocked passenger door "to look in the vehicle to see if there [were] any other drugs or [drug] paraphernalia in [defendant's] immediate area there." The officer observed suspected narcotics in an open map pocket on the lower portion of the passenger-side door. The officer later acknowledged that the narcotics found in the vehicle were not in plain view and that he

had to open the car door to discover them. The retrieved drugs subsequently were determined to be fifty bags of crack cocaine. Following the search, the police arrested the driver, handcuffed him, and discovered $535 in cash but no drugs on his person.

A grand jury charged defendant with third-degree possession of cocaine, *N.J.S.A.* 2C:35–10a(1); third-degree possession of cocaine with intent to distribute, *N.J.S.A.* 2C:35–5a(1) and b(3); and third-degree possession of cocaine with intent to distribute within 1000 feet of school property, *N.J.S.A.* 2C:35–5a and 2C:35–7. At a subsequent suppression hearing the trial court found that probable cause and exigent circumstances had existed to justify the warrantless search of the vehicle. Defendant thereafter pled guilty to all charges, subject to his right to appeal the denial of his suppression motion. The trial court sentenced defendant to an extended term of six years imprisonment, with a three-year period of parole ineligibility, and assessed the usual fines and penalties.

The Appellate Division reversed in a reported decision based on its view that the officers had lacked probable cause to conduct the warrantless search of the automobile. *State v. Wilson*, 354 *N.J.Super.* 548, 808 *A.2d* 552 (2002). We granted the State's petition for certification, 175 *N.J.* 431, 815 *A.2d* 477 (2003), and now affirm.

## II.

The legal principles governing this dispute are straightforward. Consistent with the Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution,

[a] warrantless search is presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement. The requirement that a search warrant be obtained before evidence may be seized is not lightly to be dispensed with, and the burden is on the State, as the party seeking to validate a warrantless search, to bring it within one of those recognized exceptions.

[*State v. Cooke*, 163 *N.J.* 657, 664, 751 *A.2d* 92, 95 (2000) (internal quotation marks and citations omitted).]

In satisfying that burden, the State must demonstrate by a preponderance of the evidence that there was no constitutional violation. *State v. Whittington,* 142 *N.J.Super.* 45, 51–52, 359 *A.*2d 881, 884–85 (App.Div.1976). In certain areas of our search-and-seizure jurisprudence not applicable here, our case law imposes an elevated burden on the State. *See, e.g., State v. Holland,* 176 *N.J.* 344, 360–61, 823 *A.*2d 38, 47–48 (2003) (requiring clear-and-convincing proof to satisfy second and third prongs of three-prong test for admitting fruits of search under independent-source rule).

One exception to the warrant requirement is the automobile exception. *Cooke, supra,* 163 *N.J.* at 664, 751 *A.*2d at 95–96. Under our State's constitution, that exception "applies only in cases in which probable cause and exigent circumstances are evident, making it impracticable for the police to obtain a warrant." *Id.* at 671, 751 *A.*2d at 99. Because we agree with the Appellate Division that the State did not adequately demonstrate probable cause, we will not discuss exigency other than to confirm that, although not required under the Fourth Amendment, it is a necessary element of the automobile exception under Article I, paragraph 7. *Id.* at 666, 671, 751 *A.*2d at 96–97, 99.

Familiar in concept, probable cause "eludes precise definition[.]" *State v. Sullivan,* 169 *N.J.* 204, 210, 777 *A.*2d 60, 64 (2001) (alteration in original) (internal quotation marks and citation omitted). "In general terms, it means less than legal evidence necessary to convict though more than mere naked suspicion. Probable cause exists if at the time of the police action there is a well grounded suspicion that a crime has been or is being committed." *Id.* at 210–11, 777 *A.*2d at 64 (internal quotation marks and citations omitted). It reflects a determination that, in view of all the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Demeter,* 124 *N.J.* 374, 380–81, 590 *A.*2d 1179, 1183 (1991) (internal quotation marks and citations omitted). The definition of probable cause used to evaluate a warrantless search

is the same as for a search warrant. *Whiteley v. Warden, Wyo. State Penitentiary,* 401 *U.S.* 560, 566, 91 *S.Ct.* 1031, 1035–36, 28 *L.Ed.*2d 306, 312 (1971).

In the case of a warrant, "the probable cause determination must be made based on the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously." *Schneider v. Simonini,* 163 *N.J.* 336, 363, 749 *A.*2d 336, 351 (2000). One commentator has explained that "[l]imiting consideration to the 'four corners' of the evidence before the issuing magistrate assures that the magistrate was in a position to adequately perform the constitutional function of providing independent judicial review prior to executive intrusions on individual privacy." Kevin G. Byrnes, *New Jersey Arrest, Search and Seizure,* § 5:2–5, at 74 (2003).

■ Warrantless searches, of course, are not supported by an affidavit in advance of the search but rather are evaluated based on testimony and other evidence presented to the trial court (either a municipal or Law Division judge) at a subsequent suppression hearing. Nonetheless, the "four-corners" concept is reflected in such cases in that the suppression motion is "heard and decided by the court on the basis of everything each side has to offer, including testimony if material facts are disputed." *State v. Gaudiosi,* 97 *N.J.Super.* 565, 568, 235 *A.*2d 680, 682 (App.Div. 1967). In other words, the trial court decides whether the State has justified its warrantless conduct based on the "four corners" of the evidence presented at the suppression hearing. Hence, as a general rule, the State on appeal cannot rely on factual testimony or other proof that was not submitted as part of the lower court's record. *See generally* 82 *New Jersey Practice, Criminal Practice and Procedure* § 16.18, at 12–13 (Leonard N. Arnold) (2002) (outlining procedures governing suppression motions).

### III.

Guided by the above principles, we turn to the case at hand. The State sought to justify the search before the Law Division

based essentially on two factors. First, the officer recognized defendant as a person against whom warrants for contempt had been issued. Second, defendant possessed seven small bags of what was believed to be illegal narcotics shortly after he was observed exiting the vehicle. The Appellate Division found that those facts, standing alone and without further elaboration at the suppression hearing, could not "give rise to a well grounded suspicion that the vehicle contained narcotics." *Wilson, supra,* 354 *N.J.Super.* at 556, 808 *A.*2d at 556. We agree.

In urging a contrary conclusion, the State cites our recent decision in *State v. Nishina,* 175 *N.J.* 502, 816 *A.*2d 153 (2003). In that case, a police officer smelled marijuana on the defendant's person shortly after the defendant had exited his car. Based on that smell, the officer properly conducted a pat-down search of the defendant, finding drug paraphernalia on his person. *Id.* at 517, 816 *A.*2d at 163. The officer then "observed in plain view a plastic bag protruding from the interior console of the car itself." *Ibid.* We concluded that those three facts—the smell of marijuana on the defendant's person, the discovery of drug paraphernalia, and the plain-view observation of the plastic bag—"amply supplied the officer with probable cause to suspect that drugs would be found in defendant's vehicle." *Id.* at 518, 816 *A.*2d at 163.

In this case, the officer candidly acknowledged that he saw nothing of an incriminating nature in plain view within the car's interior. Thus, a critical fact that was evident in *Nishina* is not present here. Moreover, the circumstances surrounding the search in *Nishina* served as an important context to that decision, lending support for our conclusion that the police had acted reasonably. Specifically, the police encountered the defendant and his three companions at a lower elementary school "at about ten o'clock on a Sunday night when the school clearly was closed." *Id.* at 512, 816 *A.*2d at 159. The defendant's age made it obvious that he did not attend the school. *Ibid.* In addition, the defendant's responses to certain questions "buttressed the officer's initial suspicion that defendant was not on school property for an

authorized purpose[.]" *Ibid.* Further, the facts established by the State supported a reasonable suspicion that the defendant had "parked his car across from the school rather than in its illuminated lot to avoid being detected and to conceal possible wrongdoing behind the [school] building." *Id.* at 513, 816 *A.*2d at 160.

Those or similar suspicious circumstances are absent in the case before us. In that respect, the Appellate Division concluded correctly that the following factors militated against a finding of probable cause:

> The ... vehicle committed no motor vehicle violation. There was apparently nothing suspicious about the car itself. The car stopped on its own initiative, not at police request. The occupants exited the car on their own volition. The driver had proper credentials. There was no contraband in plain view and no indication that either occupant of the vehicle had recently ingested drugs. The occupants did not attempt to flee and, indeed, it appears neither defendant nor [the driver] even knew the police were present when they stepped out of the car. There was no testimony that the warrants outstanding against defendant were for drug violations or any form of violent conduct. Until the point of defendant's arrest the two occupants demonstrated no furtive conduct. When defendant was asked to put his hands out he complied. The only incriminating conduct was that drugs dropped from defendant's clothing when he was being handcuffed. No drugs were found on the ground between the ... car and where defendant was being handcuffed. There was no testimony that the amount of drugs on defendant's person caused a suspicion that other drugs would be present in the vehicle. There was no testimony that the neighborhood was an area of high drug activity.
>
> [*Wilson, supra,* 354 *N.J.Super.* at 555, 808 *A.*2d at 554.]

The State argues forcefully that the quantity of marijuana and cocaine found on defendant's person alone provided sufficient probable cause to believe that the automobile contained additional drugs. Although that argument has some appeal to us in concept, the State submitted insufficient evidence to support it at the suppression hearing. As noted, one officer indicated that he had opened the passenger door "to see if there [were] any other drugs or [drug] paraphernalia in [defendant's] immediate area there." Aside from that bare statement, the government did not proffer testimony explaining with any degree of specificity why it suspected that such items would be found in the car.

For instance, there was no testimony that the drugs found on defendant were possessed or packaged in a fashion that furnished

the officers with a well-grounded suspicion that defendant was about to engage in illegal distribution, using the car to conceal or transport additional contraband. It was not enough to describe the quantity of drugs, their location on defendant's person, and defendant's proximity to the car. The officers needed to articulate more fully why those facts provided the threshold level of suspicion required to justify their search of the car itself. In the same vein, there was no specific testimony that, if possessed solely for personal consumption, the drugs discovered on defendant's person raised a fair probability that drug paraphernalia would be contained in the vehicle.

We reiterate that the warrantless search in this case is presumed invalid and that the government bore the burden of creating an evidentiary record necessary to uphold its conduct. In such a setting we decline to infer proofs that were not presented expressly before the trial court. Although we can infer or take judicial notice of certain facts in appropriate circumstances, *see, e.g., Nishina, supra,* 175 *N.J.* at 507, 816 *A.*2d at 156 (taking notice of fact that school identified at suppression hearing served students through fourth grade), we cannot fill in gaps in the record to supply the requisite proofs required of the State under constitutional standards. Our analysis is intended to serve not as criticism of the State's handling of the suppression motion, but merely as guidance to trial courts in future cases.

Similarly, we decline to rule on the State's alternate contention raised during oral argument that the drugs found in the automobile are fruits of a lawful search incident to defendant's arrest. In its petition for certification the State asked only that we consider whether the discovery of drugs on defendant's person provided sufficient probable cause to search the car. After we granted that petition the State informed us that it did not intend to file a supplemental brief but would "instead rely exclusively on its petition." Under those circumstances, we confine our review solely to the question presented in the petition. See *Hirsch v. State Bd. of Med. Exam'rs,* 128 *N.J.* 160, 161, 607 *A.*2d 986, 987

(1992) (declining to rule on certain arguments of appellant in part because they first were raised after petition for certification had been granted).

Lastly, the Appellate Division opinion posits a hypothetical scenario in which a person leaves a house or store and is then immediately seen selling drugs. The Appellate Division suggests that, as a matter of law, those facts would not provide probable cause to search either place. *Wilson, supra,* 354 *N.J.Super.* at 556, 808 *A.*2d at 555. Our disposition is not to be construed as approving that hypothetical statement. In avoiding bright-line pronouncements in this area of law, we continue to believe that "courts must consider the totality of the circumstances, without focusing exclusively on any one factor, in considering whether probable cause has been established." *Sullivan, supra,* 169 *N.J.* at 216, 777 *A.*2d at 67; *see also Holland, supra,* 176 *N.J.* at 362, 823 *A.*2d at 49 (observing that "[o]ur case law generally has eschewed *per se* rules" in search-and-seizure context).

## IV.

Relying solely on the proofs presented at the suppression hearing, we conclude that the State has not overcome the presumption that its warrantless search of the automobile was invalid under the federal and State constitutions. Accordingly, the judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI, ALBIN, and WALLACE—7.

*Opposed*—None.