**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2641-15T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DARRYL J. HUNTER, a/k/a DARRYL
HUNTER, DARRLY HUNTER, DAREYL
HUNTER, DARRYLK BROWN, MARKIETH
BROWN,

    Defendant-Appellant.

_____

Submitted May 8, 2017 — Decided May 31, 2017

Before Judges Nugent and Currier.

On appeal from the Superior Court of New
Jersey, Law Division, Union County, Indictment
No. 15-02-0132.

Joseph E. Krakora, Public Defender, attorney
for appellant (Michele A. Adubato, Designated
Counsel, on the brief).

Christopher S. Porrino, Attorney General,
attorney for respondent (Sarah D. Brigham,
Deputy Attorney General, of counsel and on the
brief).

PER CURIAM

Defendant Darryl J. Hunter appeals the denial of his motion to suppress evidence seized by police following a motor vehicle stop, arguing that the warrantless search violated his Constitutional rights. After a review of the record and defendant's contentions in light of the applicable principles of law, we affirm.

Defendant was charged in two indictments and an accusation with various weapons offenses and terroristic threats. The following facts are derived from the suppression motion hearing.

At 8:30 p.m. on October 3, 2014, Sergeant Todd Kelly of the Elizabeth Police Department received a message from police headquarters that an anonymous caller had described an ongoing incident on Community Lane in Elizabeth. The caller stated that a bearded, black male, wearing a gray hooded sweatshirt and khaki pants, was waving a handgun in front of numerous bystanders while calling: "Where is he?"

Kelly arrived at the area in a marked patrol car within two minutes of receiving the radio transmission from dispatch. He stopped half a block from Community Lane, in a well-lit area at the corner of Second and Pine Streets, to wait for backup units to arrive. When stopped, Kelly observed a white Pontiac pull out of a driveway connecting Community Lane to Pine Street, turn onto Pine Street, and drive towards him. The car stopped at the stop

sign directly across from Kelly, then crossed the intersection, passing the patrol car at ten to fifteen miles per hour. Kelly testified that the Pontiac was only three feet away from him as it passed his vehicle. The officer was able to see the driver clearly, and noted it was a black male with a beard wearing a gray hoodie.

Based on his nineteen years of experience and his determination that the driver of the Pontiac fit the description provided by the anonymous caller, Kelly conducted a motor vehicle stop. Defense counsel questioned the validity of the traffic stop as the anonymous caller had not mentioned a vehicle. Kelly responded that "[v]ery rarely do suspects in in-progress crimes stay exactly where they're committing the crime. Most of them flee the area."

After Kelly informed the back-up units of his observations, he made a U-turn and ordered the driver of the Pontiac to pull over on Pine Street. The driver, later identified as defendant, pulled over the vehicle, but when Kelly shone a spotlight into the rear windshield, defendant ducked down out of sight towards the passenger side of the car. After receiving information that the Pontiac was registered to an individual who lived on Community Lane, Kelly got out of his vehicle.

As Kelly was exiting his car, Elizabeth police officers Dany Rivera and Lina Castro arrived at the scene. Kelly approached the driver's side of the car, and defendant "popped" back up in his seat and immediately opened the door. Kelly confirmed that the driver's appearance and attire matched the tipster's description, and he ordered defendant to get on the ground and show his hands. Defendant complied, and Kelly and Rivera arrested him.

Through the open driver's side door of the vehicle, Castro observed a fully loaded magazine to a semi-automatic handgun on the floor by the driver's seat. She also discovered a silver and black semi-automatic handgun, matching the description provided by the tipster, under the front passenger seat. Castro seized both items. Defendant subsequently indicated that he wished to speak with Kelly. After Miranda[1] warnings were administered, defendant stated that he carried the handgun for protection from a gang member that had threatened him. Defendant also stated that the car was owned by his girlfriend.

When defendant's girlfriend arrived at the scene she gave the officers consent to search the vehicle; the search revealed a

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

A-2641-15T3

plastic ziploc bag containing a white powdery substance suspected to be cocaine and a small digital scale.

Defendant moved to suppress the evidence collected from the vehicle, arguing that the police did not establish a reasonable and articulable suspicion sufficient to conduct a motor vehicle stop. Following a suppression hearing, Judge Robert J. Mega denied defendant's motion in a written decision issued September 14, 2015. The judge found the officers' testimony to be credible, and concluded that

> [t]he key facts observed prior to the stop — the ability to see the driver's face, beard, and gray hoodie in close proximity to [] Community Lane; and the short passage of time between the report and Sergeant Kelly's observation — created a reasonable and articulable suspicion for Sergeant Kelly to initiate the stop in question. Accordingly, based on the totality of circumstances, this [c]ourt finds that enough reasonable and articulable suspicion existed to justify a stop of [d]efendant's motor vehicle.

Subsequent to the denial of his motion to suppress the evidence seized from the vehicle, defendant entered a guilty plea to second-degree unlawful possession of a weapon and third-degree terroristic threats. Defendant was sentenced to a term of seven years subject to a forty-two month parole disqualifier on the weapons charge and a concurrent three-year sentence on the

terroristic threats charge. The judge dismissed the remaining charges and imposed requisite fines and penalties.

Defendant presents the following argument on appeal:

POINT I. THE WARRANTLESS STOP AND SEARCH OF THE PONTIAC AUTOMOBILE VIOLATED THE DEFENDANT'S RIGHT TO BE FREE FROM [AN] UNLAWFUL SEARCH AND SEIZURE GUARANTEED BY THE NEW JERSEY AND FEDERAL CONSTITUTIONS.[2]

We review a motion to suppress under a deferential standard, recognizing that the trial judge has had an opportunity to "hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (citing State v. Johnson, 42 N.J. 146, 161 (1964)). We will not disturb the trial court's decision so long as it is "supported by sufficient credible evidence" and not "so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Scriven, 226 N.J. 20, 32-33 (2016) (citing Elders, supra, 192 N.J. at 243-44).

Defendant contends that Kelly did not have a reasonable and articulable suspicion sufficient to justify the motor vehicle stop leading to his arrest. He argues that the police did not

---

[2] The only argument presented by defendant in his brief is that the officer did not have a reasonable and articulable suspicion for the traffic stop.

independently corroborate the anonymous tip, and therefore, it was insufficient to support a warrantless stop of his car.

The United States and New Jersey Constitutions guarantee an individual's right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. A warrantless search is "presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement." State v. Wilson, 178 N.J. 7, 12 (2003) (quoting State v. Cooke, 163 N.J. 657, 664 (2000)).

"A lawful stop of an automobile must be based on reasonable and articulable suspicion that an offense . . . has been or is being committed." State v. Carty, 170 N.J. 632, 639-40 (citing Delaware v. Prouse, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401, 59 L. Ed. 2d 660, 673 (1979)), mod. by 174 N.J. 351 (2002).

In determining whether an investigative stop of an automobile was reasonable, a court must consider the "specific reasonable inferences" that an officer is entitled to draw based on the facts available to him at the moment of the stop and in light of his experience. State v. Maryland, 167 N.J. 471, 487 (2001) (citations omitted). "[I]narticulate hunches" and "subjective good faith" are insufficient to justify a warrantless search and seizure. Ibid. "Rather, the officer 'must be able to point to specific and articulable facts which, taken together with rational inferences

from those facts, reasonably warrant [the] intrusion.'" Ibid. (alteration in original) (citations omitted).

An anonymous tip, standing alone, is insufficient to establish a reasonable and articulable suspicion. State v. Privott, 203 N.J. 16, 26 (2010) (citing Florida v. J.L., 529 U.S. 266, 271, 120 S.Ct. 1375, 1379, 146 L. Ed. 2d 254, 260 (2000)). To satisfy the reasonable suspicion standard, the anonymous tip must be "reliable in its assertion of illegality" by providing predictive information about criminal activity. Id. at 27-28 (citing J.L., supra, 529 U.S. at 271, 120 S.Ct. at 1379, 146 L. Ed. 2d at 260-61; State v. Rodriquez, 172 N.J. 117, 131 (2002)). Thus, "[t]he police must verify that the tip is reliable by some independent corroborative effort." Id. at 26.

A court must consider the totality of the circumstances in considering whether there was a reasonable and articulable suspicion that an individual was involved in criminal activity; an anonymous tip is but one factor under this analysis. State v. Gamble, 218 N.J. 412, 433-34 (2014).

In Privott, supra, police received information from an anonymous caller who reported a man armed with a handgun at a specific location. 203 N.J. at 21. The man was described as "a tall, thin, dark-skinned man, dressed in a black jacket with a black and red cap." Ibid. When the police arrived at the scene,

they found a man who matched the physical description and was wearing a similar hat, although the jacket he wore was a different color. Ibid. The officers recognized the man from prior arrests and detected movements he made as they approached as ones commonly used by armed persons to conceal a weapon. Id. at 29. The Court found that under the totality of the circumstances the officers were justified in conducting an investigatory stop. Id. at 30.

Here, the trial judge noted that the anonymous caller described the suspect as a bearded, black male, wearing a gray hooded sweatshirt and khaki pants and waving a handgun in front of numerous bystanders. He further noted that Kelly, who received this information from the dispatcher and was the first officer to respond to the location, was clearly able to see the driver of the Pontiac exiting Community Lane as he slowly passed the police vehicle on a well-lit road within a distance of three feet. The driver was a black male with a beard wearing a gray hoodie. Judge Mega stated: "This observation was close to the location of the reported gunman, a mere half a block from the reported location of the gunman. Moreover, this observation occurred within two minutes of Sergeant Kelly receiving the report of the gunman in the area of [] Community Lane." He concluded that the evidence presented at the hearing created a "reasonable and articulable suspicion to initiate the stop in question. Accordingly, based

A-2641-15T3

on the totality of circumstances, this Court finds that a reasonable and articulable suspicion existed to justify a stop of Defendant's motor vehicle."

We are satisfied that the judge's denial of defendant's motion to suppress is supported by the credible evidence in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2641-15T3