RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0178-16T2

STATE OF NEW JERSEY,

 Plaintiff-Appellant,

v.

DARRYL A. ROUNDTREE, CRAIG L.
OWENS, JR., TYERICE D. PEACE
and MAURICE E. PEACE,

 Defendants-Respondents.
____________________________________

 Argued May 17, 2017 – Decided July 12, 2017

 Before Judges Alvarez and Accurso.

 On appeal from Superior Court of New Jersey,
 Law Division, Camden County, Indictment No.
 16-04-1114.

 Linda A. Shashoua, Assistant Prosecutor,
 argued the cause for appellant (Mary Eva
 Colalillo, Camden County Prosecutor,
 attorney; Ms. Shashoua, of counsel and on
 the brief).

 Tamika T. McKoy argued the cause for
 respondent Darryl A. Roundtree (McKoy Law
 Firm, LLC, attorneys; Ms. McKoy, of counsel
 and on the brief).

 Tamar Y. Lerer, Assistant Deputy Public
 Defender, argued the cause for respondents
 Craig L. Owens, Jr., Maurice E. Peace and
 Tyerice D. Peace (Joseph E. Krakora, Public
 Defender, attorney; Ms. Lerer, of counsel
 and on the brief).

PER CURIAM

 We granted the State's motion for leave to appeal from the

July 29, 2016 order granting motions by defendants Darryl A.

Roundtree, Maurice E. Peace, Tyerice D. Peace and Craig L.

Owens, Jr. to suppress evidence seized pursuant to a warrantless

search. The State argues:

 THIS COURT SHOULD REVERSE THE MOTION JUDGE'S
 SUPPRESSION ORDER, AS THE OFFICER'S KNOCK ON
 THE WINDOW OF A PARKED CAR, WITHOUT MORE,
 WAS MERELY A FIELD INQUIRY, AND IT WAS NOT
 THE "FRUIT" OF THE UNRELATED INVESTIGATORY
 STOP OF A PEDESTRIAN, MUCH LESS OF ANYTHING
 "POISONOUS." (Raised Below).

Having reviewed the record and heard oral argument, we affirm,

substantially for the reasons expressed by Judge Schuck in his

opinion from the bench issued on the same day as the order.

 The stop at issue took place in Brooklawn in the early

morning hours of New Year's Day 2016. Brooklawn officers

McKenney and Nicholas were in a marked police car patrolling in

the area of the Brooklawn Diner on Route 130. They were the

only two witnesses at the suppression hearing.

 McKenney testified that as they drove north, he saw a man

"coming from the back of the Brooklawn Diner towards a vehicle

parked on the side." The diner is open twenty-four hours a day,

 2 A-0178-16T2
every day, and is situated in the middle of a large parking lot.

According to the officer, it was "[r]ight around . . . 12:30

[a.m.], so a lot of people were out," and he and his partner

were "on high alert." McKenney told the court, the man, later

identified as defendant Maurice Peace, caught his attention

because "[n]ot many people are usually back there. It's where

the trash dumps are. There's – no one parks back there, so I

just thought it was suspicious."

 McKenney pulled the police car into the parking lot "to see

what was going on." As he pulled around the rear of the diner,

Peace was leaning into the driver's side window of a BMW parked

on the side of the building. The BMW was in a marked parking

space, nosed in toward the diner. The engine was not running.

McKenney pulled up behind the BMW, parking perpendicular to it.

 When he saw the police car, Peace moved away from the BMW

and got up on the sidewalk leading toward the diner's entrance.

McKenney testified he got out of his patrol car, identified

himself as "police," told Peace to stop, and asked in a "normal"

tone, "What are you doing around here?" Peace told McKenney he

was "waiting for a ride." McKenney asked him if he was with the

BMW. Peace told the officer "Yes, they just gave me a ride

here." Noticing the BMW had tinted windows and seeing "a male

 3 A-0178-16T2
in the passenger seat . . . moving around," McKenney directed

his partner to "check out what was going on."

 Officer Nicholas testified that after they pulled in and

parked behind the BMW, he got out and stood "away from the

vehicle to the right side of it" listening as McKenney addressed

Peace. When McKenney "ordered [him] to see what the other

occupants of the vehicle were doing," Nicholas, in plain clothes

but with a gun holstered on his thigh, approached the BMW.

Although aware the driver's window was open, allowing him to see

into the car, no one was sitting in the driver's seat. Nicholas

knocked instead on the front passenger window.

 Nicholas acknowledged on cross-examination that the

occupants of the car could see McKenney speaking to Peace and

would not know whether the police were detaining him. Nicholas

insisted Peace was not detained, but was free to have ignored

McKenney's command to stop and continued on his way. Nicholas

also acknowledged he was essentially blocking the passenger side

door and the exit of anyone in the passenger seat of the BMW.

He disputed, however, that the officers had "barricaded" the BMW

by parking their police SUV perpendicularly behind it. Nicholas

testified "it wasn't like they couldn't back up. There was

enough clearance for them to back up and to move that vehicle

out either way." He did concede that his idea of clearance

 4 A-0178-16T2
might be different from that of the occupants of the BMW.

Nicholas also maintained that had the front seat passenger

"walked around to the driver side and started backing out,"

refusing to speak to the police, "[t]hey would have been good to

go."

 In response to Nicholas's knock on the window, a man

subsequently identified as defendant Owens opened the car door.

When he did, Nicholas smelled the odor of burnt marijuana. He

asked Owens where the marijuana was. Owens replied there was no

marijuana in the car. Nicholas saw movement in the back seat

and ordered the occupants to sit still. When they did not

comply, Nicholas opened the backdoor. As he did so, he saw the

near seat passenger, later identified as defendant Roundtree,

kick a loaded Smith & Wesson .38 special under the front seat.

 All of the men were arrested, including the other back seat

passenger, Tyerice Peace. Searches incident to arrest revealed

both back seat passengers were in possession of counterfeit

currency. A subsequent search warrant for the car led to the

discovery of additional counterfeit currency and a metal

grinder. No marijuana was found on the men or in their car.

 After chronicling in careful detail the testimony we have

summarized here, Judge Schuck reviewed the law on field

inquiries, investigative detentions and warrantless arrests.

 5 A-0178-16T2
Applying that law to the facts, Judge Schuck concluded the

officers initial stop of Maurice Pierce was not a field inquiry,

as the State maintained, but an investigative detention. He

explained:

 McKenney entered the lot for the purpose of
 questioning Maurice Peace . . . . He did
 not ask [Peace] any introductory questions
 of the sort I talked about when I was
 defining [a] field inquiry. He did order
 Maurice Peace to stop; therefore, under
 those circumstances notwithstanding his
 relatively calm demeanor, that was not a
 field inquiry. He ordered him to stop.
 That's the reason he went in there in the
 first place and didn't ask him any of the
 introductory questions, and so the situation
 giving rise to a field inquiry does not
 exist there.

 With respect to the question of whether
 it was a valid investigatory stop, I
 conclude that it was likewise not a valid
 investigatory stop. That is because of the
 definition that I just set forth there [in
 the part of the opinion not quoted] also was
 not met. There was no reasonable basis to
 suspect that the defendant, Maurice Peace,
 was engaged in any criminal wrongdoing.

 The area behind the diner was part of
 the paved parking area surrounding the diner
 structure. Cars could drive all the way
 around the diner. There were no signs,
 fences, or gates restricting access of the
 public to that area, either on foot or by
 car. The area contained dumpsters used by
 the diner and a freezer for the diner
 connected to the diner.

 The diner generally is opened 24 hours
 a day, seven days a week and indeed was open

 6 A-0178-16T2
and serving customers on this occasion at
approximately 12:30 a.m. on New Year's Day
morning. Defendant Maurice Peace was simply
walking from the area behind the diner in a
counterclockwise direction as viewed from
above, heading in the direction of the BMW
parked on the side of the diner and of the
front main entrance of the diner.
Accordingly, this was not a valid
investigatory stop.

 By the way, I do note that I reject the
racial profiling argument that some of the
defendants advanced because there's nothing
in the record to support that conclusion.
It takes more than simply noting that the
police officers were white and the
defendants were black to conclude that the
interaction of the police with the black men
was based on racial profiling. If that were
true, every encounter between a white police
officer and a black person could be
characterized as racial profiling and
certainly that is not the case. I conclude
that the officers were acting in good faith.
They were indeed being aggressive in
undertaking their jobs to protect and serve
the public; however, if Maurice Peace
captured the attention of the police, before
they could have lawfully stopped Mr. Peace,
it is necessary for them to have conducted a
further investigation or fact-finding to
determine if a lawful basis to stop him
existed, see State v. Wilson, 178 N.J. 7,
15-16 (2003).

 A field inquiry could have [been]
pursued, but as discussed above, no proper
field inquiry was conducted in this
particular case.

 I next considered the encounter between
the police, particularly Officer Nicholas
with the other defendants occupying the BMW.
Officer McKenney, as discussed above,

 7 A-0178-16T2
entered the parking lot to stop and to
question the defendant, Maurice Peace, about
what he was doing. He had not at that point
in time noticed that the BMW was even there
at all. He first noticed it when he pulled
into the lot and saw the defendant, Maurice
Peace, leaning into the driver's window,
open driver's window of the BMW. There was
nothing unlawful or suspicious about the BMW
as it sat parked in a regular marked parking
space inside the parking area of the
Brooklawn Diner. The Police Officer
McKenney parked the police car perpendicular
behind and relatively close to the BMW. As
discussed above, Officer McKenney and
Officer Nichols — Nicholas both exited the
car. The defendant, Maurice Peace, started
walking towards the area of the front of the
diner where the entrance is and Officer
McKenney told him to stop, which Maurice
Peace did do.

 Officer McKenney asked the defendant,
Maurice Peace, if he was associated with the
BMW and Maurice Peace replied that he had
gotten a ride there in that vehicle, that he
was waiting for another ride. Because
Officer McKenney, as I discussed, noted some
movement of a male passenger or a passenger,
a passenger in the car, he directed his
partner, Officer Nicholas to go check it
out.

 I conclude that's not – he didn't
really notice the movement of a male
passenger, but a passenger because both
officers clearly testified and I believe and
find to be true that they couldn't see well
enough inside the vehicle to identify
particular people; therefore, he didn't know
then whether any passengers were male or
female. So he directed Nicholas to go and
check out what was going on with the
vehicle, what the occupants were doing, as I
said before.

 8 A-0178-16T2
 This led ultimately, and I described in
 more detail earlier, [in the part of the
 opinion not quoted], to the door of the BMW
 being opened from the inside and then
 Nicholas opening the backdoor of the
 vehicle, the rear side passenger door and
 then ultimately seeing the gun on the floor.
 All the defendants were thereafter arrested
 and charged.

 Given that nothing brought the
 attention of the two police officers to the
 BMW other than the apparent connection
 between defendant, Maurice Peace, and the
 vehicle, there is no lawful basis for the
 officers to approach and ultimately seize
 the vehicle and its occupants, the
 defendants, Owens, Roundtree, and Tyerice
 Peace.

 Accordingly, any evidence seized after
 the unlawful stop of the defendant, Maurice
 Peace, is tainted as the fruit of the
 poisonous tree, Wong Sun v. United States,
 371 U.S. 471 (1963), State v. Shaw, 213 N.J.
 398, 421 (2012), Current N.J. Arrest,
 Search, and Seizure by Kevin G. Byrnes,
 Gann, chapter 33, 2016-2017 edition.

 The judge went on to analyze, and reject, seizure of the

gun recovered in the BMW under the independent source and

inevitable discovery doctrines because no evidence in the record

suggested "that apart from the unlawful detention of Maurice

Peace, the police had any reason at all to otherwise pay

attention to the BMW."

 9 A-0178-16T2
 Finally, the judge considered the search and seizure of the

BMW standing alone, independent of the stop and seizure of

Maurice Peace.

 Alternatively, the encounter by Officer
 Nicholas with the [BMW] and its occupants
 was not a valid field inquiry or a valid
 investigatory stop. I described before that
 the police car was parked close behind and
 perpendicular to the BMW which was nose end
 to the diner, an armed officer knocked on
 the door, impliedly calling for some manner
 of response from the occupants within the
 vehicle. The windows and doors on that
 passenger side of the vehicle were closed at
 that point in time. No preliminary
 questions were – as to whether the occupants
 in the vehicle wanted to answer questions
 were asked, and presumably the officer would
 have had to shout or speak loudly as to such
 questions as to them from his position or go
 around to the open driver's window to talk
 to the occupants.

 He did neither of those things, he
 simply knocked on the car door. He had no
 reasonable and articulable suspicion of
 wrongdoing when he did so. . . .

 This is not a field inquiry, but an
 investigatory stop with no legally
 sufficient justification. Accordingly, the
 evidence obtained pursuant to the subsequent
 search is suppressed.

 Our limited standard of review on a motion to suppress is

well established. State v. Gamble, 218 N.J. 412, 424-25 (2014).

We defer to the factual findings underpinning the trial court's

decision on the motion, unless they were "clearly mistaken" or

 10 A-0178-16T2
"so wide of the mark" that the interests of justice require

appellate intervention. State v. Elders, 192 N.J. 224, 245

(2007). Deference "is required because those findings 'are

substantially influenced by [an] opportunity to hear and see the

witnesses and to have the "feel" of the case, which a reviewing

court cannot enjoy.'" Gamble, supra, 218 N.J. at 424-25

(quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Our review

of the trial court's application of the law to the facts, of

course, is plenary. State v. Hubbard, 222 N.J. 249, 263 (2015).

 Applying those standards here, it is obvious there is no

basis for overturning the trial judge's meticulous factual

findings or his careful legal analysis. As our Supreme Court

recently reiterated, "[t]he difference between a field inquiry

and an investigative detention always comes down to whether an

objectively reasonable person would have felt free to leave or

to terminate the encounter with police," measured from the

defendant’s perspective. State v. Rosario, ___ N.J. ___, ___

(2017) (slip op. at 11). Here, we agree with Judge Schuck that

there is no question on this record that an objectively

reasonable person in defendant Maurice Peace's position would

not "have felt free to leave or to terminate the encounter with

police." Ibid.

 11 A-0178-16T2
 Moreover, the Court's opinion in Rosario also makes plain

that the BMW was "seized" from the moment the officers pulled

their marked SUV in behind it, blocking its departure, even

viewing that act as "unrelated" to the detention of defendant

Maurice Peace as the State urges.1 Id. at 13 (noting that

"partially blocking in [defendant Rosario's] car from the rear,

activating the alley light in order to flood the area with

light, and exiting and proceeding directly to defendant to

address her" was "not a garden-variety, non-intrusive,

conversational interaction between an officer and an

individual"). Because the occupants of the BMW were faced with

an investigative detention at the inception of the encounter

without any reasonable or articulable suspicion of any criminal

activity on their part, the stop was unlawful and the evidence

1
 Because we analyze the reasonableness of any stop based on the
totality of the circumstances, State v. Davis, 104 N.J. 490, 504
(1986), we reject the State's position that Officer Nicholas's
knock on the window of the BMW was a field inquiry "unrelated"
to the officers' unlawful seizure of defendant Maurice Peace.
The record makes clear that Officer McKenney asked Maurice Peace
only two or three questions, one of those being whether he was
"connected" to the BMW. It is thus clear, that treating the
seizure of the BMW as "independent" of the seizure of defendant
Maurice Peace has no support in the evidence. The State's
argument that Rosario is distinguishable because Rosario's car
was completely blocked is likewise without support in the
Court's opinion in that case. Rosario, supra, slip op. at 13.

 12 A-0178-16T2
seized properly suppressed. See State v. Rodriguez, 172 N.J.

117, 132-33 (2002).

 Accordingly, we affirm, substantially for the reasons set

forth by Judge Schuck in his comprehensive and carefully

analyzed opinion from the bench on July 29, 2016.

 Affirmed.

 13 A-0178-16T2