**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5854-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WILLIAM VELEZ, a/k/a WILL
VELEZ, WILLIAM E. VELEZ,
and WILLIAMS VELEZ,

    Defendant-Appellant.

_____

Submitted January 28, 2020 - Decided March 17, 2020

Before Judges Currier and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 17-05-1243.

Joseph E. Krakora, Public Defender, attorney for appellant (James K. Smith, Jr., Assistant Deputy Public Defender, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sarah D. Brigham, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant William Velez appeals from the April 11, 2018 order denying his motion to suppress evidence seized following a traffic stop of his vehicle. After a review of the contentions in light of the record and applicable principles of law, we affirm.

We derive the facts from testimony presented at the suppression hearing. While on patrol, Belleville police officer Gary Devito observed a car with a non-working headlight. Several minutes later, the officers came up behind the same car and noticed a taillight was also not working. Devito turned on the overhead lights to conduct a traffic stop and his partner, Officer John Rossi, called in the vehicle's license plate to dispatch as well as the officers' location. Turning on the overhead lights also activated the car's movable-video recording device, also referred to as a dashcam.

Headquarters informed the officers that the registered owner of the vehicle was defendant, and his license was suspended. After learning this information, the officers approached the vehicle. As they did so, Devito observed a metal baseball bat "resting against . . . [defendant's] left leg and the door handle."

Devito asked defendant for his driving credentials, but defendant did not have a license because it was suspended. Devito then asked defendant to step out of the vehicle. As defendant got out of the car, Devito testified he

2

"immediately observed underneath the driver's . . . seat the butt of a handgun." Devito escorted defendant to the back of the vehicle and asked him why he had the bat and what was underneath the seat.

Devito explained that he did not immediately remove the gun from the car, because if he did so, and defendant were to run at him or grab him, the gun would be unsecured, and he would be in an unsafe situation. According to Devito, asking defendant to get out of the car and escorting him to the back of the patrol car placed defendant at a safe distance from the gun.

Devito testified that after talking with defendant, he left Rossi behind the car with defendant, and walked to the driver's side of the vehicle and confirmed that the weapon was a real handgun. After confirming this, defendant was arrested and put in the back seat of the police car. Devito showed Rossi the handgun and told him to search the vehicle in order "to make sure there was no other contraband or bullets . . . lying anywhere else." The dashcam recording was played during the hearing.

Defendant was charged with second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b), and fourth-degree possession of hollow-point bullets, N.J.S.A. 2C:39-3(f). He later moved to suppress the evidence, asserting it was an unlawful search and seizure because the police did not have sufficient

reasonable suspicion that defendant had committed a motor vehicle offense to justify the stop of his car. He further contended the search and seizure was not justified under either the plain view exception to the Fourth Amendment or the doctrine of inevitable discovery. Defendant argued that Devito had not seen the gun before he searched the car.

In a written decision of April 11, 2018, the judge denied the motion. He found Devito credible, noting his testimony was consistent with what was observed on the dashcam recording. The judge held that the evidence was admissible because the officers: (1) had probable cause to stop defendant's vehicle; and (2) lawfully seized the weapon under the plain view exception to a warrantless search. He found Devito's explanation for his actions during the stop and search was plausible.

In addressing probable cause, the judge stated that the officers observed defendant was driving his car with both a headlight and a taillight out, in violation of N.J.S.A. 39:3-66, and they were informed that defendant had a suspended license, in violation of N.J.S.A. 39:3-40. Therefore, the officers had the "requisite reasonable suspicion" of a motor vehicle offense to conduct a motor vehicle stop. Because defendant's license was suspended and he could

not produce it, the judge determined the officers were permitted to order defendant out of his car and arrest him.

In finding the State had satisfied the plain view exception to a warrantless search, the judge reiterated his finding that Devito was credible. The judge rejected defendant's argument that the dashcam video supported his contention that Devito did not see the gun until defendant had already been out of the car for several minutes. The judge noted that defendant had not offered any witnesses to rebut Devito's testimony, nor any proof of his argument other than asserting his subjective view of the dashcam video. The judge stated "Devito was lawfully in the viewing position when he observed the gun in plain view. Furthermore, it must have been immediately apparent to Devito, based on his training and experience as a police officer, that the item protruding from the driver's seat of the car was a firearm."

Defendant thereafter pleaded guilty to second-degree unlawful possession of a handgun and was sentenced to five years in prison with a mandatory parole ineligibility period of forty-two months.

Defendant raises one issue on appeal:

> THE SEIZURE OF THE GUN CANNOT BE JUSTIFIED UNDER THE PLAIN VIEW DOCTRINE BECAUSE, AS THE DASHCAM VIDEO SHOWS, THE OFFICER DID NOT SEE THE GUN UNTIL

AFTER HE HAD BEGUN SEARCHING DEFENDANT'S CAR. THE JUDGE WAS WRONG IN ACCEPTING THE CREDIBILITY OF THE POLICE OFFICER WHO ADMITTEDLY LIED ABOUT KEY DETAILS OF THE SEARCH IN HIS POLICE REPORT AND GRAND JURY TESTIMONY.

A trial court's factual findings in a suppression hearing are afforded great deference. State v. Gonzales, 227 N.J. 77, 101 (2016). In reviewing a motion to suppress, we defer to the findings of fact and credibility determinations of the trial judge, recognizing that he or she has had an "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We will uphold the trial judge's decision so long as it is "supported by sufficient credible evidence" and not "so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Scriven, 226 N.J. 20, 32-33 (2016) (quoting Elders, 192 N.J. at 243-44).

"[A] trial court's reliance, in part, on [a] video d[oes] not extinguish the deference the Appellate Division owe[s] to the trial court's factual findings." State v. S.S., 229 N.J. 360, 374 (2017) (citing Elders, 192 N.J. at 244-45). Even when factual findings are "based solely on video or documentary evidence," this court must defer to the trial court's decision. Id. at 379.

On appeal, defendant does not challenge the lawfulness of the traffic stop. He only asserts that the judge erred in finding the seizure of the gun was justified under the plain view doctrine. We disagree.

As the United States and New Jersey Constitutions guarantee an individual's right to be free from "unreasonable searches and seizures," U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7, a "warrantless search is presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement." State v. Wilson, 178 N.J. 7, 12 (2003) (quoting State v. Cooke, 163 N.J. 657, 664 (2000)).

One exception to the warrant requirement permits police officers to "seize evidence found 'in plain view' despite the lack of a warrant." State v. Perry, 124 N.J. 128, 148 (1991) (citing State v. Hill, 115 N.J. 169, 173 (1989)). "Under the plain-view doctrine, the constitutional limiting principle is that the officer must lawfully be in the area where he [or she] observed and seized the incriminating item or contraband, and it must be immediately apparent that the seized item is evidence of a crime." Gonzales, 227 N.J. at 101. If police officers conducting a traffic stop have met these requirements, they may seize evidence of a crime in plain view. Id. at 82.

A-5854-17T4

Defendant asserts that the dashcam video and Devito's actions demonstrate that the officer did not see the handle of the gun when defendant got out of the car. Instead, defendant contends the gun was not discovered until several minutes later, after Devito searched the car with a flashlight. Defendant also attacks Devito's credibility, highlighting one inconsistent statement in the police report and in his grand jury testimony as to whether he told defendant to put his hands into the air. Devito acknowledged that comment was not correct.

As noted, we accord great deference to the trial judge's fact-findings in our review of an order denying the suppression of evidence seized pursuant to a warrantless search. We disturb those findings "only if they are so clearly mistaken that the interests of justice demand intervention and correction." State v. Robinson, 200 N.J. 1, 15 (2009) (quoting Elders, 192 N.J. at 244).

Here, the judge reviewed the dashcam video and considered Devito's testimony, which he found credible and consistent with the video. The judge noted Devito spoke with a calm demeanor during direct and cross-examination. He said Devito's testimony did not waver, he "readily acknowledged inconsistencies and omissions, and did not appear to testify with an intent to deceive or be elusive." The judge made factual findings based on both the testimony and the video evidence.

A-5854-17T4

Defendant urges this court to disregard those findings and instead adopt his subjective view of the actions seen on the dashcam video. We decline to do so. We will defer to the judge's determination that Devito's explanation of his actions was "plausible." We discern no basis to substitute defendant's subjective interpretation of the video footage for the reasonable inference drawn by the trial judge upon his viewing of the dashcam recording and observation of Devito's testimony. See S.S., 229 N.J. at 380 (holding that "[w]hen more than one reasonable inference can be drawn from the review of" documentary evidence, "then the one accepted by a trial court cannot be unreasonable" and "the mere substitution of an appellate court's judgment for that of the trial court's advances no greater good.").

We are satisfied the denial of defendant's motion to suppress the handgun was supported by the credible evidence in the record. Because the traffic stop was justified, Devito was lawfully in the area when he observed and seized the gun. He testified that "he immediately observed underneath the driver's . . . seat the butt of a handgun." Therefore, the State met the requirements to satisfy the plain view exception to the warrant requirement.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5854-17T4