751 A.2d 92

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
ALFRED COOKE, DEFENDANT–RESPONDENT.

Argued February 14, 2000—Decided May 17, 2000.

658

*Philip C. Chronakis*, Assistant Prosecutor, argued the cause for appellant (*Fred J. Theemling, Jr.*, Hudson County Prosecutor, attorney).

*Susan Brody*, Assistant Deputy Public Defender, argued the cause for respondent (*Ivelisse Torres*, Public Defender, attorney).

*Lisa Sarnoff Gochman*, Deputy Attorney General, argued the cause for amicus curiae, Attorney General of New Jersey (*John J. Farmer, Jr.*, Attorney General, attorney).

The opinion of the Court was delivered by

VERNIERO, J.

This appeal involves the question whether the "automobile exception" to the warrant requirement of the New Jersey Constitution requires a finding of exigent circumstances. That question has become significant because the United States Supreme Court has held that exigent circumstances are not required under the Fourth Amendment to the United States Constitution, concluding that probable cause that a vehicle contains contraband is itself sufficient justification to conduct the search without a warrant. *Pennsylvania v. Labron*, 518 *U.S.* 938, 116 *S.Ct.* 2485, 135 *L.Ed.*2d 1031 (1996). We decline to reach a similar conclusion under the New Jersey Constitution. Instead, we conclude that the automobile exception under New Jersey law requires both probable cause and a finding of exigent circumstances to sustain a warrantless search of a vehicle.

Based on that conclusion and the facts of the present case, we hold that the search of the automobile was valid because both probable cause and exigent circumstances existed. Although the police officers searched the vehicle after they had already taken defendant into custody, the vehicle was still readily mobile and third persons could have removed it from the area under surveillance or removed or destroyed its contents. Accordingly, we reverse the grant of defendant's motion to suppress and remand for trial.

## I.

On May 7, 1997, Officer Timothy Harmon of the Jersey City Police Department conducted surveillance of a housing complex located on Duncan Avenue in an area known for drug-trafficking. Two weeks prior to that date, the police had received information from a reliable, confidential informant that defendant was selling drugs in that Duncan Avenue location, storing the drugs in a gray Ford Escort. Officer Harmon alone conducted the surveillance of the specific location; perimeter teams of other officers were in the area in the event their assistance was needed.

During his surveillance, Officer Harmon observed defendant in a parking lot working on what appeared to be the radio speakers within the Ford Escort. An alleged buyer approached defendant and gave him money. Defendant walked to a nearby white Hyundai, took a plastic bag from the Hyundai's passenger side, and gave the bag to the alleged buyer. The officer stated that the "bag was consistent with keeping of [controlled dangerous substances]." Based on his first-hand observations, experience with narcotics arrests in the area, and the informant's tip, the officer concluded that defendant was engaged in a drug transaction.

After that first buyer walked away, a second man (unnamed in the record) approached and appeared to be talking to defendant at the Escort. Approximately one hour later, a third man, Bryan Miles, approached. The officer testified that Miles "was known to [the police] from previous arrests." Defendant, Miles, and the unnamed man walked over to the Hyundai. Defendant handed a white object to the unnamed man, who then left. Defendant retrieved another plastic bag from the Hyundai and placed it under the passenger seat of the Escort. Defendant and Miles then drove away in the Hyundai.

Officer Harmon notified the other officers, who followed defendant and pulled the Hyundai over. The officers informed defendant that there was an unrelated, outstanding warrant for his arrest. At the same time, the officers removed Miles from the car and detained him for an unspecified time. The officers also

questioned defendant about his knowledge of the gray Ford Escort. Defendant denied any knowledge of the Escort. The officers arrested defendant, searched him, and discovered the keys to the Escort. Defendant continued to deny knowledge of that car.

Officer Harmon continued surveillance of the Escort. After arresting defendant, the other officers returned to the scene with the keys found on defendant. They searched the car and recovered illegal drugs. Officer Harmon did not participate in the search of the Escort because, he stated, "[n]ormally if you have a surveillance spot, you don't . . . give up your location."

Defendant was indicted for possession of cocaine and heroin pursuant to *N.J.S.A.* 2C:35–10a(1), possession of cocaine, heroin, and marijuana with intent to distribute pursuant to *N.J.S.A.* 2C:35–5a(1), –5b(3), –5b(12), and possession of cocaine, heroin, and marijuana with intent to distribute within 1000 feet of school property pursuant to *N.J.S.A.* 2C:35–7.

The trial court granted defendant's motion to suppress all evidence seized from the search of the Ford Escort. On reconsideration, the trial court affirmed its ruling. The court concluded that the automobile exception did not apply because the police had no exigent circumstances justifying a search without a warrant. The court believed that the Escort was not "readily mobile" because the police had arrested defendant and had him in custody, the police had defendant's keys to the Escort, and the car was under police surveillance until the time of the search.

In an unpublished decision, the Appellate Division affirmed substantially for the same reasons expressed by the trial court. The Appellate Division added that the police received no specific information that any other person might attempt to take the vehicle or any of its contents; thus, the panel found an absence of exigent circumstances. We granted both the State's motion for leave to appeal, 161 *N.J.* 332, 736 *A.*2d 525 (1999), and the Attorney General's motion for leave to appear as *amicus curiae*

(in this opinion, we refer to the State and Attorney General collectively as the "State"). We now reverse.

## II.

### A.

Article 1, paragraph 7 of the New Jersey Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized.

A warrantless search is presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement. *State v. Alston*, 88 *N.J.* 211, 230, 440 *A.*2d 1311 (1981). "The requirement that a search warrant be obtained before evidence may be seized is not lightly to be dispensed with, and the burden is on the State, as the party seeking to validate a warrantless search, to bring it within one of those recognized exceptions." *Ibid.*

In this case, the State argues that the warrantless search of the Escort was valid under the automobile exception. Defendant argues that there were no exigent circumstances to permit a warrantless search. In defining the scope of the automobile exception, we turn first to federal Fourth Amendment decisions.

The United States Supreme Court first articulated the automobile exception in *Carroll v. United States*, 267 *U.S.* 132, 45 *S.Ct.* 280, 69 *L.Ed.* 543 (1925). Generally, the automobile exception permits warrantless searches of readily movable vehicles if law enforcement officers have probable cause to believe the vehicle contains evidence of a crime. *Alston, supra,* 88 *N.J.* at 230–31, 440 *A.*2d 1311; *State v. Martin,* 87 *N.J.* 561, 567, 436 *A.*2d 96 (1981). The exception applies equally to vehicles stopped on the highway and vehicles parked on a public street or in a parking lot. *Cardwell v. Lewis,* 417 *U.S.* 583, 594, 94 *S.Ct.* 2464, 2471, 41

*L.Ed.*2d 325, 337 (1974); *State v. Colvin,* 123 *N.J.* 428, 433, 437, 587 *A.*2d 1278 (1991); *Martin, supra,* 87 *N.J.* at 567, 436 *A.*2d 96.

The early federal cases focused on the inherent mobility of automobiles, which created exigent or emergent circumstances making it impracticable to obtain a warrant. *See, e.g., Chambers v. Maroney,* 399 *U.S.* 42, 52, 90 *S.Ct.* 1975, 1981, 26 *L.Ed.*2d 419, 429 (1970); *Cooper v. California,* 386 *U.S.* 58, 59, 87 *S.Ct.* 788, 789, 17 *L.Ed.*2d 730, 732 (1967). Later, the Supreme Court articulated an additional rationale based on a reduced expectation of privacy in motor vehicles. *See, e.g., California v. Carney,* 471 *U.S.* 386, 392, 105 *S.Ct.* 2066, 2070, 85 *L.Ed.*2d 406, 414 (1985) ("The public is fully aware that it is accorded less privacy in automobiles because of th[e] compelling need for regulation."); *Cardwell v. Lewis, supra,* 417 *U.S.* at 590, 94 *S.Ct.* at 2469, 41 *L.Ed.*2d at 335 (noting that vehicles often contain personal effects, which are in plain view); *Cady v. Dombrowski,* 413 *U.S.* 433, 441, 93 *S.Ct.* 2523, 2528, 37 *L.Ed.*2d 706, 714–15 (1973) (explaining that use of automobiles is highly regulated bringing law enforcement in contact with persons in their vehicles where contraband may be in plain view).

More recently, the Supreme Court has held that "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more." *Pennsylvania v. Labron, supra,* 518 *U.S.* at 940, 116 *S.Ct.* at 2487, 135 *L.Ed.*2d at 1036 (citing *California v. Carney, supra,* 471 *U.S.* at 393, 105 *S.Ct.* at 2070, 85 *L.Ed.*2d at 414). In a subsequent case, *Maryland v. Dyson,* 527 *U.S.* 465, ——, 119 *S.Ct.* 2013, 2014, 144 *L.Ed.*2d 442, 445 (1999), the Court confirmed that "under [the Court's] established precedent, the 'automobile exception' has no separate exigency requirement."

In *Labron,* the Supreme Court addressed two appeals from the Pennsylvania Supreme Court. In the first case, the police observed the defendant engaging in drug transactions; apparently, the drugs were obtained from the trunk of a car. The police

arrested the suspect and searched the trunk. The search revealed bags of cocaine. The Pennsylvania Supreme Court held that the evidence should be suppressed because there were no exigent circumstances to justify the search without a warrant.

In the second case, the police conducted a search of a farmhouse and a truck after an undercover informant agreed to buy drugs from the defendant. The search of the truck revealed cocaine. Again, the Pennsylvania Supreme Court suppressed the evidence because it found that there were no exigent circumstances to justify a warrantless search. *Labron, supra*, 518 *U.S.* at 940, 116 *S.Ct.* at 2487, 135 *L.Ed.*2d at 1036.

In both Pennsylvania appeals, the United States Supreme Court rejected the conclusion of that state's highest court that "the rule permitting warrantless searches of automobiles is limited to cases where 'unforeseen circumstances involving the search of an automobile [are] coupled with the presence of probable cause.'" *Id.* at 940, 116 *S.Ct.* at 2487, 135 *L.Ed.*2d at 1035. Instead, the Supreme Court upheld both searches solely because they were supported by probable cause. *Id.* at 940, 116 *S.Ct.* at 2487, 135 *L.Ed.*2d at 1036. In so doing, the Court essentially disposed of the additional requirement of exigent circumstances. Thus, under the Fourth Amendment, virtually all warrantless searches of vehicles will be valid under the automobile exception as long as the search is supported by probable cause.

### B.

In view of those recent federal holdings, we must decide whether the automobile exception requires a finding of exigent circumstances under the New Jersey Constitution. We note that on more than one occasion this Court has interpreted our State Constitution as affording its citizens greater protections than those afforded by its federal counterpart. *State v. Pierce*, 136 *N.J.* 184, 209, 642 *A.*2d 947 (1994) (refusing to adopt blanket rule that would have permitted warrantless automobile searches incident to all arrests); *State v. Hempele*, 120 *N.J.* 182, 195, 576 *A.*2d

793 (1990) (finding privacy interest in curbside garbage); *State v. Novembrino,* 105 *N.J.* 95, 145, 519 *A.*2d 820 (1987) (declining to find good-faith exception to exclusionary rule); *State v. Hunt,* 91 *N.J.* 338, 348, 450 *A.*2d 952 (1982) (finding privacy interest in phone billing records); *State v. Johnson,* 68 *N.J.* 349, 355, 346 *A.*2d 66 (1975) (finding heavy burden to show· validity of non-custodial consent to search).

■ The State asks that we adopt a rationale for the automobile exception, similar to one adopted by the federal courts under the Fourth Amendment, based solely on the lesser expectation of privacy in automobiles. Further, the State argues that, under *Labron,* this Court should dispose of the requirement of exigent circumstances altogether and find that probable cause alone is sufficient for a warrantless search of an automobile.

■ In New Jersey, it is well-settled that the automobile exception

> permits police to stop and search a moving or readily movable vehicle when there is probable cause to believe the vehicle contains criminally related objects. The rationale for this exception is grounded in the exigent circumstances created by the inherent mobility of vehicles and the somewhat lessened expectation of privacy in one's vehicle.
>
> [*State v. Patino,* 83 *N.J.* 1, 9, 414 *A.*2d 1327 (1980).]

In essence, "[t]he justification to conduct a warrantless automobile search ... turns on the circumstances that make it impracticable to obtain a warrant when the police have probable cause to search the car." *Colvin, supra,* 123 *N.J.* at 437, 587 *A.*2d 1278.

This Court has repeatedly looked to exigent circumstances to justify warrantless automobile searches. *Colvin, supra,* 123 *N.J.* at 429, 587 *A.*2d 1278; *State v. Esteves,* 93 *N.J.* 498, 504, 461 *A.*2d 1128 (1983); *Alston, supra,* 88 *N.J.* at 233, 440 *A.*2d 1311; *Martin, supra,* 87 *N.J.* at 569, 436 *A.*2d 96; *Patino, supra,* 83 *N.J.* at 9, 414 *A.*2d 1327; *State v. LaPorte,* 62 *N.J.* 312, 316, 301 *A.*2d 146. (1973). Without a requirement of exigent circumstances, virtually every search of an automobile would be valid provided the police had probable cause to act. For example, under the rationale advanced by the State, a car parked in the home driveway of

vacationing owners would be a fair target of a warrantless search if the police had probable cause to believe the vehicle contained drugs. Such a broad ruling has no basis in our case law. *Colvin, supra,* 123 *N.J.* at 431, 587 *A.*2d .1278 ("No case has established the proposition that law-enforcement officers in 'every conceivable circumstance' may dispense with the warrant requirement in the context of an automobile search.").

In prior cases, such as *Alston, Martin,* and *LaPorte,* we held that the warrantless automobile searches were reasonable only because they were supported by probable cause and exigent or emergent circumstances. In *Alston,* the officers followed a speeding car. 88 *N.J.* at 216, 440 *A.*2d 1311. The passengers of the vehicle moved furtively, as if they were trying to conceal something. *Ibid.* During a valid stop, the officer observed shot gun shells and a bag on the floor protruding approximately twelve inches from under the seat. *Id.* at 216–17, 440 *A.*2d 1311. The officer felt the bag and concluded the object was a shotgun. *Id.* at 217, 440 *A.*2d 1311. A further search of the vehicle revealed additional weapons. *Ibid.* We upheld the search because the events leading up to the search were spontaneous and unforeseeable, and posed a potential threat to officer safety. *Id.* at 234, 440 *A.*2d 1311. Thus, there were exigent circumstances to justify the warrantless search. *Ibid.*

In *Martin,* the police were investigating a "freshly-committed" armed robbery. 87 *N.J.* at 563, 436 *A.*2d 96. Based on a description of the vehicle and the robbers, the officers pulled over the defendants' vehicle. *Id.* at 564, 436 *A.*2d 96. Although one of the occupants fled, the police let the car go after a credentials check and a brief search of the vehicle. *Id.* at 565, 436 *A.*2d 96. On orders of a superior, the officers relocated the vehicle parked in a dimly lit parking lot; the defendants were no longer in the vehicle. *Ibid.* After the vehicle was identified as the one used in the robbery, the officers immediately searched the vehicle. *Ibid.* The search revealed evidence connecting the defendants to the robbery. *Ibid.*

Finding exigent circumstances, we upheld the warrantless search in *Martin*, stating:

> The occupants of the car, the suspected robbers, were still at large. Because the police had stopped the car, the occupants were alerted that they might have been suspected of involvement in the armed robbery. They might have returned at any moment to move the car or remove the car's contents. In addition, the officers had reason to believe that the occupants of the station wagon were not only alerted but also armed and dangerous. The illumination in the parking lot where the vehicle was discovered at that early morning hour was dim at best. In view of the possibility of the suspects' return to the car, "[a] careful search at that point was impractical and perhaps not safe for the officers...."
>
> [*Id.* at 569–70, 436 *A.*2d 96 (citations omitted).]

We also noted that the vehicle was suspected to be an instrumentality in a freshly-committed armed robbery and that the circumstances furnishing the officers with probable cause arose spontaneously. Accordingly, we concluded "[t]here was an urgent, immediate need for the police to ascertain whether the car contained evidence of the armed robbery, before the suspects had an opportunity to leave the area or to destroy or dispose of other evidence." *Id.* at 570, 436 *A.*2d 96.

Likewise, in *LaPorte*, we focused on the practicality of obtaining a search warrant. The Belleville police were notified of a robbery by a man with a briefcase who was also carrying a .38 caliber revolver. 62 *N.J.* at 315, 301 *A.*2d 146. Witnesses described the defendant and his attire, which included dark sunglasses. *Ibid.* They also described his get-away vehicle "as a 1967–1970 car, dark blue with a black top, possibly an Oldsmobile or General Motors' make." *Ibid.* Initially, the police were unable to solve that robbery. *Ibid.* About two weeks later, the police were notified that the defendant was wanted for robbery in Roselle Park. *Ibid.* The car was described as a 1970 blue Pontiac. *Ibid.* Late in the evening, police officers from both towns located the car, arrested the defendant, impounded the car, and searched it at police headquarters. *Ibid.* They recovered a .38 caliber revolver, a pair of sunglasses, a briefcase, and other items related to the Roselle Park robbery. *Ibid.* After the defendant's arrest, witnesses from the first robbery identified the defendant as the perpetrator. *Id.* at 315–16, 301 *A.*2d 146.

In *LaPorte,* we held that "[t]he police had the right to seize defendant's automobile since it had been reported as an instrumentality used in the robbery." *Id.* at 316, 301 *A.*2d 146. The Court reasoned that the warrantless search was justified because the vehicle "might have been moved and whatever evidence it contained lost." *Ibid.* In other words, the circumstances made it impracticable for the police to procure a search warrant and immediate action was necessary. *Ibid.*

In view of our unwavering precedent and the important rights at stake, we see no need to modify our jurisprudence. Stated differently, the State has provided no compelling basis for us to curtail or eliminate those standards that for decades have served the criminal justice system, and served it well, balancing constitutional guarantees against the need for effective law enforcement. Although federal decisional law may serve to guide us in our resolution of New Jersey issues, "we bear ultimate responsibility for the safe passage of our ship." *Hempele, supra,* 120 *N.J.* at 196, 576 *A.*2d 793. We, therefore, decline to apply the holding of *Labron* to cases evaluated under our State Constitution.

■ Similarly, although we have previously acknowledged that there is a lesser expectation of privacy in one's automobile, *Colvin, supra,* 123 *N.J.* at 433, 587 *A.*2d 1278, we do not believe that those expectations are diminished to the point that they may constitute the sole justification for a warrantless search. *Patino, supra,* 83 *N.J.* at 10, 414 *A.*2d 1327 ("One operating or [traveling] in an automobile does not lose all reasonable expectation of privacy simply because the vehicle is mobile and subject to government regulation."). Rather, the lessened privacy expectation is one factor, which, when combined with the existence of probable cause and the overall exigency of the situation, may justify the warrantless search. *Id.* at 9, 414 *A.*2d 1327.

■ We emphasize that there is a constitutional preference for a warrant, issued by a neutral judicial officer, supported by probable cause. *State v. Demeter,* 124 *N.J.* 374, 381, 590 *A.*2d 1179 (1991); *Patino, supra,* 83 *N.J.* at 7, 414 *A.*2d 1327. "The

cautionary procedure of procuring a warrant ensures that there is a reasonable basis for the search and that the police intrusion will be reasonably confined in scope." *State v. Bruzzese*, 94 *N.J.* 210, 218, 463 *A.*2d 320 (1983), *cert. denied*, 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984). The automobile exception applies only in cases in which probable cause and exigent circumstances are evident, making it impracticable for the police to obtain a warrant. *See Pierce, supra*, 136 *N.J.* at 213–15, 642 *A.*2d 947 (discussing other exceptions to the warrant requirement, including circumstances justifying weapons search for officer protection and lawful boundaries of search incident to arrest).

### III.

■ Having set forth the standards to be used when deciding automobile-exception cases, we must now apply them to this case to determine whether the police conduct was justified. We first consider the probable cause question. "[P]robable cause is the minimal requirement for a constitutionally reasonable search of a readily movable vehicle...." *Alston, supra*, 88 *N.J.* at 231, 440 *A.*2d 1311. Probable cause has been defined as a well-grounded suspicion that a crime has been or is being committed. *Ibid.*

■ In this case, the trial court specifically found that the police were given information from a reliable informant that defendant was selling drugs and storing them in the Escort. The record elsewhere indicates that that information was confirmed by Officer Harmon's first-hand observations of what he believed to be illegal drug activity. *State v. Henry*, 133 *N.J.* 104, 110, 627 *A.*2d 125 ("An arrest for an offense committed in an officer's presence is presumptively based on probable cause."), *cert. denied*, 510 *U.S.* 984, 114 *S.Ct.* 486, 126 *L.Ed.*2d 436 (1993). The trial court further found that the officer witnessed the exchange of money and the placing of a plastic bag in the Escort. Officer Harmon testified to his belief that the bag contained narcotics. Based on those facts, the officers had a well-grounded suspicion that the Ford Escort contained illicit substances.

■ Thus, the first prong of the automobile exception, *i.e.,* the existence of probable cause, has been established. We note that defendant seeks a hearing on that question. However, because the existing record so clearly supports a finding that the officers had probable cause to search the Ford Escort, we see no reason to remand the matter for that purpose. *See State v. Tucker,* 137 *N.J.* 259, 272, 645 *A.*2d 111 (1994) (finding failure to hold prompt . probable cause hearing was not prejudicial because record established overwhelming evidence of probable cause), *cert. denied,* 513 *U.S.* 1090, 115 *S.Ct.* 751, 130 *L.Ed.*2d 651 (1995).

■ We next consider whether the State has met its burden in establishing that exigent circumstances existed to justify a warrantless search of the Escort, the second prong of the inquiry. Exigent circumstances have been described as "unforeseeability and spontaneity of the circumstances giving rise to probable cause, and the inherent mobility of the automobile...." *Alston, supra,* 88 *N.J.* at 233, 440 *A.*2d 1311 (citation omitted). Exigent circumstances may exist if the unanticipated circumstances that give rise to probable cause occur swiftly. *Id.* at 234, 440 *A.*2d 1311. In addition, exigent circumstances may arise where "[a]ny element of surprise had been lost; the vehicle contained the 'contraband' drugs; there were 'confederates waiting to move the evidence'; the police would need 'a special police detail to guard the immobilized automobile.'" *Colvin, supra,* 123 *N.J.* at 434–35, 587 *A.*2d 1278.

■ The lower courts incorrectly focused on the fact that defendant was arrested and placed in custody. This Court has previously stated that "exigent circumstances do not dissipate simply because the particular occupants of the vehicle may have been removed from the car, arrested, or otherwise restricted in their freedom of movement." *Alston, supra,* 88 *N.J.* at 234, 440 *A.*2d 1311. That is a sound rule because, until the vehicle is seized by the police and removed from the scene, "it is potentially accessible to third persons who might move or damage it or remove or destroy evidence contained in it." *Ibid.*

■ Here, the potential for removal or destruction of evidence existed because Miles, known to the police because of prior arrests, and at least two other persons observed by Officer Harmon, knew that defendant had engaged in drug transactions. Specifically, Miles was present when defendant stored the drugs in the Escort and was aware that defendant had been arrested or detained by the police. By fair inference, Miles thereby knew that the Escort might be unattended. Even if we assume that Miles was unable to return quickly to the Duncan Avenue location, the record supports a reasonable belief that other third parties (for example, the unnamed man who remained with defendant and Miles at the Escort for almost an hour until defendant and Miles drove away in the Hyundai) could have "move[d] the evidence" from the Escort. *Colvin, supra,* 123 *N.J.* at 435, 587 *A.*2d 1278.

Similarly, we believe that the lower courts incorrectly relied on the fact that the police were in possession of a set of keys for the Escort at the time they searched it. Simply because the police were in possession of one set of keys does not logically preclude the possibility that one or more third parties had another set of keys to gain access to the Escort. That possibility is significant in a case in which a defendant repeatedly disavows ownership or knowledge of the car to be searched. *See, e.g., LaPorte, supra,* 62 *N.J.* at 316, 301 *A.*2d 146 (noting that former wife had duplicate key to vehicle, creating exigent circumstance justifying warrantless search).

Additionally, the courts below emphasized that there was time to secure a search warrant because Officer Harmon had the Escort under surveillance. That emphasis also is misplaced. There is an urgent, immediate need to search a vehicle when there is a realistic possibility that someone may remove the vehicle or its contents.

In addition, the degree of exigency is heightened when the police are involved in an ongoing investigation of events occurring close in time to the search. In this case, events occurred rapidly: Officer Harmon observed defendant's drug transactions and hid-

ing place for the drugs; defendant had just been arrested and at least one third party knew of that arrest and knew that defendant kept drugs in the Escort; other third parties had knowledge of the drug sales; and the drugs were stored in a vehicle parked in an open lot in an area known for drug-trafficking. Given those facts, we are satisfied that there was a sufficient likelihood that evidence would be destroyed had the search of the vehicle not been conducted, contributing to the overall exigency of the situation.

Moreover, Officer Harmon was alone and observing the vehicle from a concealed surveillance point located in a room within the Duncan Avenue complex. The officer testified that he could not leave his post and "give up" his surveillance point to guard the car. In that regard, we have recognized that "it may be impracticable" to require police officers, while awaiting a warrant, to guard vehicles stopped on an open highway or parked on a public street. *Colvin, supra,* 123 *N.J.* at 435, 587 *A.*2d 1278. We are satisfied that, on these facts, " 'it would [have been] unduly burdensome and unreasonably restrictive to require the police to post a guard and repair to the courthouse for a warrant once they [had] probable cause to search' the car." *Ibid.* (citing *United States v. Bradshaw,* 515 *F.*2d 360, 363 (D.C.Cir.1975)).

In *Colvin,* we had occasion to address a case factually similar to the one here. In that case, police officers were patrolling a neighborhood in a high drug-trafficking area. 123 *N.J.* at 430, 587 *A.*2d 1278. The officers observed the defendant engaged in what they suspected was a drug transaction. *Ibid.* The officers shined a light at the defendant; the defendant attempted to flee and threw a clear vial containing a substance that looked like cocaine. *Ibid.* The officers arrested the defendant and drove him to the police station. *Ibid.* Within minutes of the arrest, an informant told police that drugs had been stored in the defendant's car, which was parked on the street, and that third parties knew about the arrest and would attempt to remove the drugs from the vehicle. *Ibid.* Based on the informant's description, the officers

immediately found the car and confirmed it belonged to the defendant. *Ibid.* The officers searched the vehicle and discovered cocaine under the dashboard. *Ibid.*

We held

that when, without advance planning, police encounter a parked car, have probable cause to believe that the vehicle contains criminal contraband such as drugs, and have articulable reasons to believe that the evidence may otherwise be lost or destroyed, they may seize and search the vehicle for the contraband without the necessity of a warrant.

[*Id.* at 429–30, 587 *A.*2d 1278.]

There were a number of factors we deemed relevant to our holding: the element of surprise had been lost; the vehicle contained illicit drugs; third parties were "waiting to move the evidence"; and the police would have to guard the vehicle while awaiting a warrant. *Id.* at 434–35, 587 *A.*2d 1278. Based on those factors, we concluded it was impracticable to secure a warrant and that the search was reasonable to prevent the potential loss or destruction of evidence. *Id.* at 435, 587 *A.*2d 1278.

The same is true in this case. There are several factors we consider relevant to a finding of exigency: it would have been impracticable to require Officer Harmon to leave his surveillance post to stand guard over the Escort; the element of surprise was lost when defendant was arrested in the presence of Miles; third parties had knowledge of the location of the Escort and were aware that defendant stored drugs in either the Escort or Hyundai; those same parties could have attempted to remove or destroy the drugs in the time necessary to obtain the warrant; and other parties in this known drug-trafficking area could have removed the car itself. Based on those factors, we are persuaded that the State has met its burden in demonstrating the impracticability of obtaining a warrant.

That said, we note that any one of the above factors, standing alone, would be insufficient to support a finding of exigency. Rather, it is the combination of factors in this case that justify the warrantless search. As stated previously, a car parked in the home driveway of vacationing owners, without more, does not give

rise to exigency. As another example, exigency would not have existed in the present case if the officer had not observed or reasonably believed that third parties were capable of destroying or removing the evidence contained in the car. We must await future cases to develop other examples.

## IV.

We conclude by stating the obvious: the term "exigent circumstances" is, by design, inexact. It is incapable of precise definition because, by its nature, the term takes on form and shape depending on the facts of any given case. We reiterate that exigency in the constitutional context amounts to "circumstances that make it impracticable to obtain a warrant when the police have probable cause to search the car." *Colvin, supra,* 123 *N.J.* at 437, 587 *A.*2d 1278. It is that impracticability and the existence of probable cause to believe that the vehicle contains evidence of a crime, together with a lessened expectation of privacy in an automobile, that tips the balance in favor of condoning the warrantless search. Although the balance is a delicate one, we must attempt to maintain it to protect the rights and interests of all members of the community.

## V.

The judgment of the Appellate Division is reversed and the matter is remanded for trial.

*For reversal and remandment*—Chief Justice PORITZ, and Justices O'HERN, STEIN, COLEMAN, LONG, VERNIERO and LAVECCHIA—7.

*Opposed*—None.