**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5486-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SEAN C. COGDELL, a/k/a SEAN GOGDELL,
SEAN GOGDETT, DWIGHT S. MURPHY, SEAN
C. COGDELL, IVY DANTE and IVY DONTE,

    Defendant-Appellant.

_____

Submitted June 6, 2017 — Decided August 2, 2017

Before Judges Fasciale and Sapp-Peterson.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Accusation No. 16-
05-0116.

Joseph E. Krakora, Public Defender, attorney
for appellant (Stephen P. Hunter, Assistant
Deputy Public Defender, on the brief).

Carolyn A. Murray, Acting Essex County
Prosecutor, attorney for respondent (Tiffany
M. Russo, Special Deputy Attorney
General/Acting Assistant Prosecutor, of
counsel and on the brief).

PER CURIAM

Following the denial of his motion to suppress physical evidence, defendant Sean Cogdell pled guilty to Accusation 16-05-00116, charging him with second-degree possession of a firearm while committing a controlled dangerous substance/bias crime, N.J.S.A. 2C:39-4(a). Defendant also pled guilty to the second count in three separate indictments: I-14-03-00718, I-16-02-00421, and I-16-03-00949, each of which charged him with third-degree manufacturing/distribution of a controlled dangerous substance, N.J.S.A. 2C:35-5(a)(1). In exchange, the State recommended an aggregate custodial sentence of seven years with a forty-two month period of parole ineligibility and dismissal of the remaining charges. The court sentenced defendant in accordance with the agreement and additionally imposed the requisite fines and penalties.

On appeal, defendant raises one point for our consideration:

> THE SUPPRESSION MOTION SHOULD HAVE BEEN GRANTED BECAUSE THE POLICE CONDUCTED A SEIZURE OF DEFENDANT WITHOUT A REASONABLE, ARTICULABLE SUSPICION TO BELIEVE DEFENDANT HAD COMMITTED A CRIME AND THE SUBSEQUENT ABANDONMENT OF THE PROPERTY WAS A RESULT OF THE ILLEGAL SEIZURE. U.S. Const. Amends. IV; XIV; N.J. Const. Art. I, ¶¶ 1, 7.

We affirm.

The relevant facts were established at a hearing on the motion to suppress. On October 14, 2013, plainclothes detectives Del Mauro and Costa, traveling in an unmarked vehicle westbound on Clinton Avenue in Newark, observed two individuals engaged in a conversation in front of 98 Clinton Avenue. One of the individuals displayed currency in his hands. Suspecting a possible narcotics transaction underway, the detectives decided to investigate further. They pulled their vehicle to the curb. As the officers exited their vehicle and approached the two men, they saw a pill bottle in the hand of the other individual, later identified as defendant. When the detectives announced their presence as police, defendant looked up, appeared startled, and started to run. Once defendant started to run, Detective Mauro yelled, "stop police." While running, defendant discarded the pill bottle and a black magnetic box from his pocket. As the black magnetic box was being discarded, it revealed several glycine envelopes of suspected heroin. Detective Mauro pursued defendant until he apprehended him. During the pursuit, he never lost sight of defendant, did not see anyone else running with defendant, and did not see anyone, other than defendant, discarding objects to the ground.

In denying defendant's motion to suppress the physical evidence seized, the motion judge found that defendant's seizure did not occur until after the two detectives observed defendant

3                                                        A-5486-15T2

with the prescription bottle, which the motion judge concluded gave the detectives probable cause to believe that defendant was in possession of a controlled dangerous substance. We agree.

The Fourth Amendment to the Constitution of the United States and Article I, paragraph 7 of the New Jersey Constitution protect citizens of this State from unreasonable searches and seizures. State v. Pena-Flores, 198 N.J. 6, 18 (2009). "A warrantless [seizure] is presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement." State v. Cooke, 163 N.J. 657, 664 (2000). "Because our constitutional jurisprudence evinces a strong preference for judicially issued warrants, the State bears the burden of proving by a preponderance of the evidence that a warrantless search or seizure falls within one of the few well-delineated exceptions to the warrant requirement." State v. Mann, 203 N.J. 328, 337-38 (2010) (quoting State v. Elders, 192 N.J. 224, 249 (2007).

Police encounters with individuals generally occur at three distinct levels: a field inquiry, an investigatory stop, and/or an arrest. State v. Nishina, 175 N.J. 502, 510-11 (2003). There are constitutional considerations at all levels of encounters. Ibid. Here, the trial court found the investigative stop as a basis for upholding the detectives' actions.

An investigative stop, or the so-called "Terry[1] stop," does not require probable cause to believe a person has committed or is about to commit an offense.  Id. at 510.  Rather, "[a] police officer may conduct an investigatory stop if, based on the totality of the circumstances, the officer ha[s] a reasonable and particularized suspicion to believe that an individual has just engaged in, or was about to engage in, criminal activity."  State v. Stovall, 170 N.J. 346, 356 (2002) (citing Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 899, 906) (1968)).

"A police officer must be able 'to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the intrusion."  State v. Thomas, 110 N.J. 673, 678 (1988) (quoting Terry, supra, 392 U.S. at 21, 88 S. Ct. at 1879, 20 L. Ed. 2d at 906).  Specific and articulable facts are more than a police officer's "inchoate and unparticularized suspicion or hunch[.]"  State v. Privott, 203 N.J. 16, 29 (2010) (quoting Terry, supra, 392 U.S. at 27, 88 S. Ct. at 1883, 20 L. Ed. 2d at 909).  "No mathematical formula exists for deciding whether the totality of circumstances provide[s] the officer with an articulable or particularized suspicion that the individual in question was involved in criminal activity."  State

---

[1] Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 899, 906) (1968)).

v. Davis, 104 N.J. 490, 505 (1986). In such an evaluation, we afford "weight to 'the officer's knowledge and experience' as well as 'rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise.'" State v. Citarella, 154 N.J. 272, 279 (1998) (quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)).

We also note, "[t]he fact that purely innocent connotations can be ascribed to a person's actions does not mean that an officer cannot base a finding of reasonable suspicion on those actions as long as 'a reasonable person would find the actions are consistent with guilt.'" Id. at 279-80 (quoting Arthur, supra, 149 N.J. at 11). Nonetheless, "an investigative stop may become a de facto arrest" when the conduct of police officers escalates into action that is more intrusive than what is necessary to accomplish the investigation, measured of course, under the totality of the then existing circumstances. State v. Bernokeits, 423 N.J. Super. 365, 372 (App. Div. 2011). Ultimately, "[i]n any given case, the reasonableness of the investigatory detention is a function of the degree and kind of intrusion upon the individual's privacy balanced against the need to promote governmental interests." Id. at 372 (citing Davis, supra, 104 N.J. at 504).

We apply these concepts to the totality of the circumstances confronting the detectives at the time of defendant's seizure.

A-5486-15T2

Relying upon State v. Tucker, 136 N.J. 158 (1994), the crux of defendant's argument is that his seizure was not based upon a reasonable and articulable suspicion of criminal activity because the seizure occurred before the detectives observed the prescription pill bottle. To support this contention, defendant points to Detective Mauro's initial testimony during direct examination where the detective testified that:

> [u]pon us, you know, walking towards them, they observed us. Mr. Cogdell looked at us, had a surprised look on his face. We yelled, "Stop Police," as we were going to further investigate. The other -- the unknown black male had pulled the money back, walked off and he started running, Mr. Cogdell.

When asked whether he observed defendant holding anything after he and his partner made their initial observations, Detective Mauro responded, "At this point no."

The record reveals that later in his direct examination, Detective Mauro changed his testimony. Specifically, after testifying that he did not remember when he first saw the prescription bottle, he was permitted to refresh his recollection with a police report of the incident. Once he refreshed his recollection, he testified he first observed the prescription bottle as he and his partner were exiting their vehicle, at which point he yelled, "stop police." Relying upon Detective Mauro's initial testimony, defendant argues the police announced their

presence by yelling "stop police," before observing the prescription bottle. Defendant therefore contends the detectives' actions constituted an illegal seizure, without the requisite reasonable and articulable suspicion, necessitating the suppression of the physical evidence recovered following his apprehension.

Defendant's argument, however, overlooks the motion judge's specific findings. Despite the change in the officer's testimony after refreshing his recollection, the motion judge credited the version of Detective Mauro's testimony wherein he testified that he observed the prescription bottle as he was exiting his unmarked vehicle and did not yell, "stop police," until defendant started to run away.

In our review, we are "bound to uphold a trial court's factual findings in a motion to suppress provided those 'findings are supported by sufficient credible evidence in the record.'" State v. Watts, 223 N.J. 503, 516 (2015) (quoting Elders, supra, 192 at 243-44 (2007)). "Deference to those findings is particularly appropriate when the trial court has [had] the 'opportunity to hear and see the witnesses and to have the feel of the case, which a reviewing court cannot enjoy.'" Ibid. (quoting Elders, supra, 192 N.J. at 244). Review of a trial court's legal conclusions,

however, is conducted de novo. Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013).

Here, the motion judge found the order to stop was given after Detective Mauro observed the prescription bottle in defendant's hand and, defendant appearing surprised by the announcement of police presence, started to run. Thus, the court concluded the seizure did not take place immediately as defendant urges. Rather, the court was satisfied that at the time the seizure occurred, the detectives had probable cause to believe defendant was in possession of a controlled dangerous substance.

That there were inconsistencies in the detective's testimony did not require the motion judge to reject the detective's testimony entirely. Inconsistency was but one factor, along with other factors, the judge was obliged to consider in his overall assessment of the witness's credibility. See Model Jury Charge (Criminal), "Prior Contradictory Statements of Witnesses (Not Defendant)" (1994). The judge noted, for example, the witness's experience. The judge also pointed out the witness's explanation regarding the passage of time between the incident and his testimony, which led the judge to state, "when you look at the time it doesn't surprise me that he didn't remember those things, the other person. Because I think he was focused on, at that point, Mr. Cogdell."

We discern no basis to disturb the judge's credibility assessment here. The finding that the seizure occurred after there was reasonable and articulable suspicion and that the contraband recovered was lawfully seized, is supported by the record. Consequently, the motion judge properly concluded the facts surrounding defendant's seizure and recovery of the physical evidence were distinguishable from the circumstances in Tucker, supra, 136 N.J. at 172 (holding that "[p]roperty is not considered abandoned when a person throws away incriminating articles due to the unlawful actions of police officers".

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5486-15T2