**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2054-17T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DESHAWN R. SANDERS, a/k/a
DELCHUN SANDERS, and
DE'SHAWN SANDERS,

    Defendant-Appellant.

_____

> Submitted April 30, 2020 – Decided August 25, 2020
>
> Before Judges Alvarez and DeAlmeida.
>
> On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 14-06-1024.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Alicia J. Hubbard, Assistant Deputy Public Defender, of counsel and on the brief).
>
> Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Lisa Sarnoff Gochman, of counsel and on the brief).

PER CURIAM

Defendant DeShawn Sanders appeals from a September 11, 2017 judgment of conviction after a jury found him guilty of three drug-related offenses. We affirm.

I.

The following facts are derived from the record. At approximately 4:00 a.m. on March 2, 2014, Neptune Township Police Sergeant Leslie Borges was in a marked police vehicle surveilling the Centerfolds Gentlemen's Club from an adjacent parking lot. The area outside of the club, which closed at 5:00 a.m., was known as a high crime area involving narcotics transactions.

The officer saw a man, later identified as defendant, exit the club, walk through the parking lot, and enter a vehicle in a row of parked cars. Defendant sat in the car for four or five minutes before walking back into the club, leaving the interior light on. Borges drove over to the car and checked the license plate at his computer terminal. He then returned to a partially hidden parking spot.

Meanwhile in the club, defendant shared cocaine with codefendant Richard Pena and offered to sell him two bags of the drug. Pena agreed and the two exited the club.

A-2054-17T3

Borges saw defendant and Pena enter defendant's vehicle. Defendant entered the driver's seat and Pena the front passenger seat. Borges drove four car-lengths away from defendant's vehicle, with his front and overhead lights off.

The officer approached defendant's car on foot. The interior light illuminated the front seat area and Borges saw defendant hand something to Pena, who put the object in his pocket. The officer then saw a tied sandwich bag in defendant's hand containing a white substance, suspected to be cocaine.

After defendant removed the tie from the bag in his hand, Borges called for backup and knocked on the car window. Defendant turned toward the center console and threw the bag in his hand at Pena, who put it into his other pocket. Borges placed the two men under arrest and instructed defendant to exit the car.

A pat down revealed defendant was in possession of a fold of powdered cocaine and $570 in cash. Pena's search uncovered two "twists," or small plastic-wrapped packages, of cocaine. He spontaneously admitted, "[a]ll I have are the two twists that he sold me." Borges searched the car's console and found a scale with a one-hundred-gram weight and a small amount of marijuana.

At the police station, defendant and Pena waived their Miranda rights and gave statements to police. Defendant admitted to possessing cocaine and a scale

3

but denied selling anything to Pena. He claimed he and Pena went to his car to drink. Pena admitted to having purchased cocaine from defendant.

Defendant's car was transported to the police station. While in the booking area, defendant asked Borges to retrieve cash from the car. The officer found $4,050 in the glove box.

A grand jury indicted defendant, charging him with third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1); third-degree possession of a controlled dangerous substance with intent to distribute, N.J.S.A. 2C:35-5(b)(3); and third-degree distribution of a controlled dangerous substance, N.J.S.A. 2C:35-5(b)(3). He was also issued a summons charging him with the disorderly persons offenses of possession of fifty grams or less of marijuana, N.J.S.A. 2C:35-10(a)(4), and possession with intent to use drug paraphernalia, N.J.S.A. 2C:36-2.[1]

---

[1] Pena was charged with third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1). He entered a guilty plea in exchange for 364 days in the county jail or entry into a drug treatment program as a condition of probation. He was required to testify truthfully at defendant's trial. Having completed a drug treatment program, Pena was sentenced to fines only.

A-2054-17T3

Prior to trial, defendant filed a motion to suppress the contents of his vehicle, including the scale, the weight, and the marijuana.[2] The trial court denied the motion, concluding exigent circumstances justified the warrantless search of defendant's car. The court found that the officer, having seen defendant turn toward the console as he approached the car, was justified to search the console for weapons or drugs.

During jury selection, the State exercised a peremptory challenge to strike A.W., an African-American male juror. The trial court rejected defendant's objection to the peremptory challenge, finding that the State offered legitimate race-neutral reasons for striking the juror and had not engaged in a pattern of discriminatory use of its peremptory challenges. The facts relating to defendant's objection to the peremptory challenge will be discussed in greater detail below.

The jury found defendant guilty of all three charges. The court granted the State's motion to sentence defendant to a mandatory extended term pursuant to N.J.S.A. 2C:43-6(f). The court merged the two possession counts into the distribution count and sentenced defendant to the minimum mandatory term for

---

[2] Defendant also argued the statement he gave at the police station should be suppressed as the fruit of the illegal search of his car.

5

a third-degree offense of a five years of imprisonment with a three-year period of parole ineligibility.  On the State's motion, the court dismissed the summons charging defendant with the two disorderly persons offenses.

This appeal followed.  Defendant raises the following arguments for our consideration.

POINT I

THE FRUITS OF THE AUTOMOBILE SEARCH MUST BE SUPPRESSED BECAUSE THE INTRUSION WAS NOT PRECIPITATED BY EXIGENT CIRCUMSTANCES OR THE NEED TO OBTAIN OWNERSHIP DOCUMENTS.

POINT II

THE TRIAL COURT ERRONEOUSLY RULED THAT THE STATE'S PEREMPTORY CHALLENGES TO EXCUSE THE SOLE AFRICAN-AMERICAN [MALE] WAS BASED UPON A LEGITIMATE NON-DISCRIMINATORY REASON GIVEN THAT A SIMILARLY SITUATED CAUCASIAN MALE WAS NOT STRUCK BY THE STATE.

POINT III

THE POLICE OFFICER FACT WITNESSES IMPROPERLY OFFERED OPINION TESTIMONY THAT A DRUG TRANSACTION HAD TAKEN PLACE.  THE ADMISSION OF SUCH TESTIMONY NOT ONLY DENIED THE JURY THE OPPORTUNITY TO SERVE AS THE JUDGES OF

THE FACTS, BUT DENIED MR. SANDERS A FAIR TRIAL.

POINT IV

MR. SANDERS WAS DEPRIVED OF DUE PROCESS AND THE CERTAINTY OF A UNANIMOUS VERDICT BECAUSE THE COURT FAILED TO INSTRUCT THE JURY TO FIND, BEFORE CONVICTING, THAT HE COMMITTED A SPECIFIC ACT OF POSSESSION, POSSESSION WITH INTENT, OR DISTRIBUTION[.]

POINT V

EVEN IF EACH INDIVIDUAL ERROR DOES NOT REQUIRE REVERSAL, THE AGGREGATE OF THE ERRORS DENIED THE DEFENDANT DUE PROCESS AND A FAIR TRIAL.

II.

We apply a deferential standard of review to a trial court's factual findings after a suppression hearing, upholding findings "supported by sufficient credible evidence in the record." State v. S.S., 229 N.J. 360, 381 (2017). We review de novo the trial court's application of its factual findings to the governing principles of law. State v. Jessup, 441 N.J. Super. 386, 389-90 (App. Div. 2015).

Article I, Paragraph 7 of the New Jersey Constitution, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." See also U.S. Const. amend. IV.

"Under our constitutional jurisprudence, when it is practicable to do so, the police are generally required to secure a warrant before conducting a search . . . ." State v. Hathaway, 222 N.J. 453, 468 (2015). A warrant to conduct a search will not be issued except "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched" and the persons and things to be seized. U.S. Const. amend. IV; accord N.J. Const., art. I, ¶ 7; State v. Smith, 212 N.J. 365, 387 (2012).

Warrantless searches are presumed to be invalid unless they fall within an exception to the warrant requirement. State v. Wilson, 178 N.J. 7, 12 (2003). At the time of the events in question, an exception was recognized for the search of an automobile under exigent circumstances. State v. Pena-Flores, 198 N.J. 6, 28 (2009).[3] The exception is justified by: "(1) the ready mobility of the vehicle and the inherent potential for loss or destruction of evidence before a warrant is obtained; and (2) the decreased expectation of privacy in motor vehicles, which are subject to extensive government regulation." Id. at 20.

---

[3] In 2015, the Supreme Court abandoned the exigent circumstances standard because it was "unsound in principle and unworkable in practice . . . ." State v. Witt, 223 N.J. 409, 447 (2015). The holding in Witt created a new rule of law with prospective application only. Id. at 449. The search of defendant's car in 2014, therefore, is properly analyzed under the holding in Pena-Flores.

A-2054-17T3

Under Pena-Flores, a warrantless search of a motor vehicle is permissible where the stop was unexpected, the police had probable cause to believe the car contained evidence of a crime, and exigent circumstances exist under which it is impracticable to obtain a warrant. Id. at 28; State v. Cooke, 163 N.J. 657, 667-68 (2000). Exigency is determined on a case-by-case basis. State v. Dunlap, 185 N.J. 543, 551 (2006).

In making an exigency determination, the court considers:

> the time of day; the location of the stop; the nature of the neighborhood; the unfolding of the events establishing probable cause; the ratio of officers to suspects; the existence of confederates who know the location of the car and could remove it or its contents; whether the arrest was observed by passersby who could tamper with the car or its contents; whether it would be safe to leave the car unguarded and, if not, whether the delay that would be caused by obtaining a warrant would place the officers or the evidence at risk.
>
> [Pena-Flores, 198 N.J. at 29.]

In addition,

> exigent circumstances do not dissipate simply because the particular occupants of the vehicle may have been removed from the car, arrested, or otherwise restricted in their freedom of movement. State v. Alston, 88 N.J. 211, 234 (1981). That is a sound rule because, until the vehicle is seized by police and removed from the scene, it is potentially accessible to third persons who might move or damage it or remove or destroy evidence contained in it. Ibid.

9                                          A-2054-17T3

[Cooke, 163 N.J. at 672 (quotations omitted).]

The trial court's denial of defendant's motion to suppress is well supported by the record. Borges saw defendant move toward the center console as he approached the vehicle. He did not know if the console contained a weapon or drugs. The car was in a high crime area known for narcotics transactions in a parking lot with patrons of a gentlemen's club freely walking about. Despite the early morning hour, the club was still open. There were bystanders who observed defendant's arrest. The two officers on scene each had one defendant in custody. An exigency was present because it was necessary for Borges to determine if there was a weapon or contraband in the vehicle that could have been taken or destroyed by the patrons in the parking lot once the officers took the defendants to the police station. Had the officers left the car unattended, any of the patrons in the parking lot could have entered the vehicle. In addition, the officers were involved in an ongoing investigation of events occurring close in time to the search, making it impractical to obtain a search warrant. State v. Nishina, 175 N.J. 502, 518 (2003); Cooke, 163 N.J. at 673.[4]

---

[4] The State argues the constitutionality of the search is moot because the items seized from the car did not form the basis of defendant's convictions and were relevant only to the municipal court charges that were dismissed. This is true

III.

We will uphold a trial court's ruling on whether the State exercised its peremptory challenges on constitutionally impermissible grounds unless it is clearly erroneous. State v. Thompson, 224 N.J. 324, 344 (2016). The standard of review "necessarily applies to the trial court's assessment of the prosecutor's candor and sincerity in the presentation of reasons for exercising peremptory challenges." Id. at 345.

The United States and New Jersey Constitutions prohibit prosecutors from exercising peremptory challenges against potential jurors based on their race or ethnicity. Batson v. Kentucky, 476 U.S. 79, 89 (1986); Thompson, 224 N.J. at 339-440. Defendant, an African-American male, argues the trial court erred in finding that the State relied on race-neutral reasons to excuse an African-American male from the jury.

"[T]he determination of whether the prosecution has exercised peremptory challenges in a discriminatory manner involves a three-step procedure." State v. Clark, 316 N.J. Super. 462, 468 (App. Div. 1998). It begins with a "rebuttable

---

of the marijuana. However, in his closing argument, the assistant prosecutor asked the jury to consider the scale as evidence of defendant's intent to distribute cocaine. Because the comment may have influenced the jury's deliberations, we address the validity of the search.

A-2054-17T3

presumption that the prosecution has exercised its peremptory challenges on" permissible grounds. Thompson, 224 N.J. at 340 (quoting State v. Gilmore, 103 N.J. 508, 535 (1986)). To rebut this presumption, the defense must show "that the prosecution exercised its peremptory challenges on constitutionally-impermissible grounds." Ibid. (quoting Gilmore, 103 N.J. at 535).

As the party objecting to a peremptory challenge, defendant bears the burden to prove purposeful discrimination based on the "totality of the relevant facts . . . ." Batson, 476 U.S. at 94. "The opponent of the strike bears the burden of persuasion regarding racial motivation . . . ." Thompson, 224 N.J. at 334 (quoting Davis v. Ayala, 576 U.S. 257, 271 (2015)). "That burden is slight, as the challenger need only tender sufficient proofs to raise an inference of discrimination." State v. Osorio, 199 N.J. 486, 492 (2009).

After the defense has made this showing, the burden shifts to the State to "articulat[e] 'clear and reasonably specific' explanations of its 'legitimate reasons' for exercising each of the peremptory challenges." Thompson, 224 N.J. at 341 (quoting Gilmore, 103 N.J. at 537). The party exercising the peremptory challenge must provide evidence "that the peremptory challenge[] under review [is] justifiable on the basis of concerns about situation-specific bias." Gilmore, 103 N.J. at 537. The trial court must determine whether counsel provided a

"reasoned, neutral basis for the challenge or if the explanations tendered are pretext." Osorio, 199 N.J. at 492. The party "must satisfy the court that [it] exercised such peremptories on grounds that are reasonably relevant to the particular case on trial or its parties or witnesses . . . ." Gilmore, 103 N.J. at 538 (alteration in original).

In the third step, if the court is satisfied that legitimate nondiscriminatory grounds have been advanced in response to the objection, it must then determine "whether, by a preponderance of the evidence, the party contesting the exercise of a peremptory challenge has proven that the contested peremptory challenge was exercised on . . . impermissible grounds of presumed group bias." Osorio, 199 N.J. at 492-93. The court must consider whether the party exercising the peremptory challenge

> has applied the proffered reasons for the exercise of the disputed challenges even-handedly to all prospective jurors. A nondiscriminatory reason for exercising a peremptory challenge which appears genuine and reasonable on its face may become suspect if the only prospective jurors with that characteristic who the [party exercising the peremptory challenge] has excused are members of a cognizable group.
>
> In addition, the court must consider the overall pattern of the [party exercising the peremptory challenge]'s use of its peremptory challenges. Even if the reasons for each individual challenge appear sufficient when considered in isolation from the . . . other challenges,

the use of a disproportionate number of peremptory challenges to remove members of a cognizable group may warrant a finding that those reasons are not genuine and reasonable.

Finally, the court must consider the composition of the jury ultimately selected to try the case. Although the presence on the jury of some members of the group alleged to have been improperly excluded does not relieve the trial court of the responsibility to ascertain if any prospective juror was peremptorily challenged on a discriminatory basis, this circumstance may be highly probative of the ultimate question whether the . . . proffered nondiscriminatory reasons for exercising peremptory challenges are genuine and reasonable.

[Id. at 506 (alterations in original) (quoting Clark, 316 N.J. Super. at 473-74).]

Here, the court approved the following question for each potential juror: "As a general proposition, do you think that a police officer is more likely, just as likely, or less likely to tell the truth than a witness who's not a police officer." (Question 16). The judge was inclined to excuse any juror who answered "more likely" or "less likely" but would entertain rehabilitation of the juror by either party on a case-by-case basis.

The judge also approved the following question for each potential juror: "Would any of you give greater or lesser weight to the testimony of a police officer merely because of his or her status as a police officer." (Question 17).

The judge was similarly inclined to excuse jurors who answered "greater weight" or "lesser weight," subject to rehabilitation by either party.

Juror A.W. provided inconsistent answers to Questions 16 and 17, first stating that he would be more inclined to find an officer truthful then rescinding that statement. In response to a separate question, A.W. stated that his brother had not been treated fairly by the prosecutor in another county after he was involved in a fight with an off duty police officer. He stated that his brother was prosecuted for illegal possession of a weapon, but the officer involved in the fight was not charged. A.W. also stated he had applied for a position with a law enforcement agency, but was turned down. The State exercised a peremptory challenge to A.W.

Defendant's counsel objected, citing <u>Batson</u> and <u>Gilmore</u>, arguing that after four panels of fifty potential jurors A.W. was the first African-American man on the jury and noting the State was exercising its first peremptory challenge of the day to strike him. The State opposed the objection, noting that there were two African-American women already seated as jurors without objection from the State. In addition, as of that point, the State had exercised only four peremptory challenges, striking three Caucasian women and one African-American male, A.W.

A-2054-17T3

The trial court found defendant met his initial burden under Osorio. After a careful analysis, however, the court determined the State had proffered legitimate race-neutral reasons for striking A.W. The court concluded A.W.'s characterization of his brother's treatment after the fight was that police officers did something improper which resulted in his brother being prosecuted unfairly. The court determined that A.W.'s statement was akin to his saying police officers are untruthful.

With respect to the second step of the analysis, the court noted the jury at that point had two African-American female jurors. The court concluded that this represented a higher percentage of African-American jurors than in the overall jury venire.

Finally, the court determined the State's proffered reasons for striking A.W. were credible and not based on race. The court found credible the assistant prosecutor's statement he struck A.W. for his potential bias against police officers, both because of his perception of his brother's treatment and because of having been rejected from a position with a law enforcement agency.[5]

---

[5] Jury selection continued for two more days. The prosecution and defense were entitled to a ten peremptory challenges each. R. 1:8-3(d). The State did not use all of its peremptory challenges by the time the jury was sworn. The final composition of the jury is not in the record.

A-2054-17T3

The trial court's findings with respect to the assistant prosecutor's candor and sincerity in the presentation of reasons for exercising the peremptory challenge to A.W. are supported by the record. We see in the record no clearly mistaken conclusions demanding intervention and correction. A.W. was stricken based on situational bias in a race-neutral exercise of the State's peremptory challenge. The composition of the jury at the time, as well as the State's overall use of peremptory challenges do not demonstrate racially-based motives for striking one juror.

Nor do we find persuasive defendant's argument the trial court erred by failing to consider that the State did not use a peremptory challenge to strike a Caucasian male juror who was troubled by his brother's treatment by police. That juror told the court that his brother was involved in a motor vehicle accident when he was a minor and police attempted to question him without his parents being present. Charges against the juror's brother arising from the accident were ultimately dismissed. The Caucasian juror, however, did not state that he believed police escaped criminal liability for their actions, acted in a dishonest way, or that his brother was inappropriately prosecuted.

17

IV.

Defense counsel cross-examined Borges at length with respect to the forfeiture of the cash seized from defendant's person and car. On redirect, the officer testified he initiated forfeiture proceedings "[b]ecause my investigation revealed [defendant] was distributing narcotics." While defendant objected on relevancy grounds, he did not object to the testimony being beyond the scope of permissible lay testimony. We, therefore, review defendant's challenge to the testimony under the plain error standard for an error "clearly capable of producing an unjust result . . . ." State v. Whitaker, 200 N.J. 444, 465 (2009) (citing R. 2:10-2).

A lay witness may not offer a lay opinion on a matter "not within [the witness's] direct ken . . . and as to which the jury is as competent as he to form a conclusion[.]" State v. McLean, 205 N.J. 438, 459 (2011) (alterations in original) (quotation omitted). It was inappropriate for Borges to offer his lay opinion that defendant was engaged in distributing narcotics. See id. at 461-63 (holding that it was improper for a police officer to give lay opinion that the exchange of small items for what appeared to be paper money, without more, was a narcotics transaction).

The admission of this testimony, however, was harmless error. Defendant opened the door to the officer's testimony with extensive cross-examination questions about the forfeiture of defendant's cash. "The doctrine of opening the door allows a party to elicit otherwise inadmissible evidence when the opposing party has made unfair prejudicial use of related evidence." State v. James, 144 N.J. 538, 554 (1996). In light of the cross-examination questions exploring the difference between seizure and forfeiture of funds, the State was entitled to ask Borges why he had completed a forfeiture form for the money seized from defendant. In addition, the record contains testimony from Pena describing defendant's sale of cocaine to him in detail, and from the officer describing defendant's acts in the car and possession of cocaine when arrested. The officer's lay opinion testimony was cumulative to the highly incriminating fact testimony admitted at trial.

V.

We see no error in the jury instructions with respect to unanimity because the instruction clearly conveyed to the jury that it had to find guilt beyond a reasonable doubt as to both instances in which defendant distributed cocaine to Pena – in the bathroom and in the car. "The notion of unanimity requires 'jurors to be in substantial agreement as to just what a defendant did' before determining

19

his or her guilt or innocence." State v. Cagno, 211 N.J. 488, 516 (2012) (quoting State v. Frisby, 174 N.J. 583, 596 (2002)); R. 1:8-9. "The general rule is that 'in cases where there is a danger of a fragmented verdict[,] the trial court must upon request offer a specific unanimity instruction.'" Cagno, 211 N.J. at 517 (quoting Frisby, 174 N.J. at 597-98). Because defendant did not object to the instructions at trial, the matter is reviewed for plain error, Rule 2:10-2, and is considered in light of the totality of the jury charge. State v. Jordan, 147 N.J. 409, 422 (1997).

The two packages of cocaine found in defendant's possession were labeled S14 and S16. One package was the remainder of the sample distributed to Pena in the club and one was the package defendant distributed in the car. The trial court instructed the jury it had to find beyond a reasonable doubt that defendant possessed, possessed with intent to distribute, and distributed both S16 and S14 before convicting defendant of the charges. They were never given the alternative to return a guilty verdict as to one distribution event but not the other.

In addition, the court gave the jury the general unanimity instruction. "Ordinarily, a general instruction on the requirement of unanimity suffices to instruct the jury that it must be unanimous on whatever specifications it finds to be the predicate of a guilty verdict." State v. Parker, 124 N.J. 628, 641 (1991); accord State v. Harris, 141 N.J. 525, 562 (1995). Although a specific unanimity

charge "should be granted on request, in the absence of a specific request, the failure so to charge does not necessarily constitute reversible error." Parker, 124 N.J. at 637. Only if "it appears that a genuine possibility of jury confusion exists or that a conviction may occur as a result of different jurors concluding that a defendant committed conceptually distinct act" will a general unanimity instruction fail to suffice. Cagno, 211 N.J. at 516-17 (quoting Parker, 124 N.J. at 641). In light of the instructions given here, there is no realistic possibility that some jurors found that defendant distributed cocaine to Pena in the car but not in the bathroom or vice-versa.

To the extent that we have not addressed defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2054-17T3