**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0962-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JEFFREY PREVILON,

     Defendant-Appellant.

_____

> Argued October 4, 2021 – Decided November 19, 2021
>
> Before Judges Fasciale and Firko.
>
> On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 17-09-2434 and 17-09-2436.
>
> Tamar Y. Lerer, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Tamar Y. Lerer, of counsel and on the briefs).
>
> Caitlinn Raimo, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens II, Acting Essex County Prosecutor, attorney; Caitlinn Raimo, of counsel and on the brief).

PER CURIAM

After pleading guilty, defendant appeals from his conviction for second-degree possession of a firearm while committing a violation of N.J.S.A. 2C:35-5, N.J.S.A. 2C:39-4.1(a).[1] He primarily challenges an order denying his motion to suppress, contending that the evidence was the fruit of an unlawful search and seizure and that the motion judge erred by finding probable cause for the arrest and search incident to the arrest. In addition, defendant generally argues that the sentencing judge imposed an excessive sentence without adequate explanation. The judges correctly denied the motion and imposed the sentence. We therefore affirm.

Two officers, Officer Kevin Wright and Detective Henry Suarez, who were in their police vehicle, saw defendant as he walked in the middle of the

[1] A grand jury indicted and charged defendant with third-degree possession of a controlled dangerous substance (CDS) heroin, N.J.S.A. 2C:35-10(a); third-degree possession of CDS heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1), N.J.S.A. 2C:35-5(b)(3); second-degree possession of CDS heroin within 500 feet of a public housing facility, N.J.S.A. 2C:35-7.1(a); third-degree possession of CDS cocaine, N.J.S.A. 2C:35-10(a); third-degree possession of CDS cocaine with intent to distribute, N.J.S.A. 2C:35-5(a)(1), N.J.S.A. 2C:35-5(b)(3); second-degree possession of CDS cocaine within 500 feet of a public housing facility, N.J.S.A. 2C:35-7.1(a); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); second-degree possession of a firearm while attempting to commit a violation of N.J.S.A. 2C:35-5, N.J.S.A. 2C:39-4.1(a); and second-degree possession of a weapon by a convicted felon, N.J.S.A. 2C:39-7(b)(1).

2

street with what appeared to be a medicine bottle. They stopped him because defendant had been "staggering, [and] walking . . . side to side." The officers then pulled over their vehicle to question defendant and inspect the bottle he was carrying.

After Wright exited the car, with his badge and police vest visible, defendant said, "my bad, officers, it's just a little syrup." Wright took the bottle and examined its contents. He looked inside and determined, because of the "smell and[ ]thickness" of the liquid and the scratched-off label, that it "appeared that it could be possibly cough syrup." Wright then asked defendant "if he had a prescription for the bottle," and defendant replied he did not.

Wright then detained and arrested defendant. He removed defendant's backpack to handcuff him, and when the officer put the backpack on the ground, Wright and Suarez "heard a clink" sound, "as if metal was hitting concrete." Suarez searched defendant incident to the arrest and seized a plastic bag in defendant's waistband containing eighteen glassine envelopes, five vials, eight jugs of CDs, and two nylon bags of loose cocaine. For their safety, Wright searched the backpack suspecting it contained a firearm due to the backpack's weight, the sound it made when he put it down, and the immediate area, which

A-0962-19

from the officers' background and training had been known "as a high narcotic, violence area." The backpack contained a firearm.

At the suppression hearing, defendant argued that the initial stop, the arrest, and the searches were illegal. The judge found the officers had reasonable suspicion to stop defendant because he was staggering in the middle of the road with the bottle. The judge also found that they had probable cause to arrest defendant after observing him drink from the bottle, hearing him admit the bottle was "a little bit of syrup," and examining the bottle itself. The judge found the police had authority to search defendant incident to the arrest, and that the search of the backpack was within defendant's immediate control and not remote. He held that the discovery of the handgun was inevitable once they brought defendant to the police station.

On appeal, defendant raises the following points for this court's consideration:

POINT I

THE SEIZURE AND SEARCH OF DEFENDANT'S BELONGINGS WERE ILLEGAL.

A. Defendant's Belongings Were Seized And Searched Without Probable Cause Or An Exception To The Warrant Requirement.

4

B. Even If There Were Probable Cause That Defendant Committed A Disorderly Persons Offense, Defendant Should Have Been Issued A Summons And Released. Therefore, The Custodial Arrest And Search Incident To That Arrest Were Illegal.

POINT II

DEFENDANT'S SENTENCE IS EXCESSIVE AND THE [JUDGE] FAILED TO EXPLAIN THE REASONS FOR ITS IMPOSITION. THEREFORE, THE SENTENCE MUST BE VACATED AND THE MATTER REMANDED FOR RESENTENCING.

I.

We begin with defendant's first argument—that the police illegally searched him without probable cause or an exception to the warrant requirement; and even if there was probable cause that he had committed a disorderly persons offense, the police should have issued a summons and released him rather than arresting and detaining him.

In our review of the grant or denial of a motion to suppress, we "must defer" to the motion judge's factual findings "so long as those findings are supported by sufficient evidence in the record." State v. Dunbar, 229 N.J. 521, 538 (2017) (quoting State v. Hubbard, 222 N.J. 249, 262 (2015)). We ordinarily defer to those findings because they "are substantially influenced by [the judge's] opportunity to hear and see the witnesses and to have the 'feel' of the

5

case, which a reviewing [judge] cannot enjoy." State v. Lamb, 218 N.J. 300, 313 (2014) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). We will disregard those findings only when a judge's findings of fact are "so clearly mistaken that the interests of justice demand intervention and correction." State v. Hagans, 233 N.J. 30, 37-38 (2018) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). We review a motion judge's legal conclusions de novo. Dunbar, 229 N.J. at 538.

There are three types of interactions with law enforcement, each involving different constitutional implications depending on the event's impact on an individual's freedom to leave the scene. First, a "field inquiry is essentially a voluntary encounter between the police and a member of the public in which the police ask questions and do not compel an individual to answer." State v. Rosario, 229 N.J. 263, 271 (2017). The individual is free to leave; therefore, field inquiries do not require a well-grounded suspicion of criminal activity before commencement.[2] Id. at 271-72; see also Elders, 192 N.J. at 246. Second, an investigatory stop or detention, sometimes referred to as a Terry[3] stop, involves a temporary seizure that restricts a person's movement. A Terry stop

---

[2] This first interaction is not an issue on appeal.

[3] Terry v. Ohio, 392 U.S. 1 (1968).

A-0962-19

implicates a constitutional requirement that there be "'specific and articulable facts which, taken together with rational inferences from those facts,' give rise to a reasonable suspicion of criminal activity." Elders, 192 N.J. at 247 (quoting State v. Rodriguez, 172 N.J. 117, 126 (2002)). Third, an arrest requires "probable cause and generally is supported by an arrest warrant or by demonstration of grounds that would have justified one." Rosario, 229 N.J. at 272.

To establish that a stop was valid, the State has the burden of proving that the police were aware of "specific and articulable facts which, taken together with rational inferences from those facts, [gave] rise to a reasonable suspicion of criminal activity." State v. Mann, 203 N.J. 328, 338 (2010) (quoting State v. Pineiro, 181 N.J. 13, 20 (2004)); see Terry, 392 U.S. at 20. To determine whether reasonable suspicion exists, a judge must consider the totality of the circumstances, viewing the "whole picture" rather than taking each fact in isolation. State v. Nelson, 237 N.J. 540, 554 (2019) (quoting State v. Stovall, 170 N.J. 346, 361 (2002)). This analysis also considers police officers' "background and training," id. at 555, including their ability to "make inferences from and deductions about the cumulative information available to them that

A-0962-19

'might well elude an untrained person.'" Ibid. (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).

Investigative stops are justified, even absent probable cause, "if the evidence, when interpreted in an objectively reasonable manner, shows that the encounter was preceded by activity that would lead a reasonable police officer to have an articulable suspicion that criminal activity had occurred or would shortly occur." State v. Davis, 104 N.J. 490, 505 (1986). Judges are to determine whether the totality of the circumstances gives rise to an "articulable or particularized suspicion" of criminal activity, not by use of a strict formula, but "through a sensitive appraisal of the circumstances in each case." Ibid. The judge adhered to these rules.

The judge believed the officers had properly concluded the investigative stop was justified. They stopped defendant because he was in a high crime and narcotics area, walking in the middle of the road, staggering from side-to-side, carrying and drinking from a medicine bottle, and defendant immediately said, "my bad, officers, it's just a little syrup." We have no reason to disturb the judge's findings, which are supported by the credible evidence in this record.

The Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution protect citizens against unreasonable

A-0962-19

searches and seizures and require a showing of probable cause prior to an arrest or the issuance of a warrant. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. "The probable-cause requirement is the constitutionally-prescribed standard for distinguishing unreasonable searches from those that can be tolerated in a free society[.]" State v. Novembrino, 105 N.J. 95, 106 (1987). "A warrantless search [or seizure] is presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement." Gamble, 218 N.J. at 425 (quoting State v. Cooke, 163 N.J. 657, 664 (2000)). The State, as the party seeking to validate the warrantless search, "has the burden of proving the validity of the search [or seizure]." State v. Maryland, 167 N.J. 471, 489 (2001).

The standards for determining probable cause to arrest and probable cause to search are identical. State v. Smith, 155 N.J. 83, 92 (1998). Our Supreme Court has stated that the probable cause standard "is not susceptible of precise definition." State v. Moore, 181 N.J. 40, 45 (2004) (citing State v. Wilson, 178 N.J. 7, 13 (2003)). Nevertheless, the Court has consistently held that "a principal component of the probable cause standard 'is a well-grounded suspicion that a crime has been or is being committed.'" Ibid. (quoting State v. Nishina, 175 N.J. 502, 515 (2003)); see also Maryland v. Pringle, 540 U.S. 366,

9

371 (2003) (holding that "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt").

Probable cause, however, "is not a stringent standard." State in Int. of J.G., 151 N.J. 565, 591 (1997). It does not require the suspicion that a crime has been or is being committed "be correct or more likely true than false." State v. Johnson, 171 N.J. 192, 207 (2002) (internal citation omitted). Rather, probable cause simply requires "a practical, common-sense decision whether, given all the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 214 (internal quotation marks and citation omitted); see also Florida v. Harris, 568 U.S. 237, 244 (2013).

The judge concluded that "based on all the foregoing facts, without isolating any particular fact, the [officers] in this case had probable cause to arrest [defendant]." The judge found that because he blurted out, "my bad, officers, it's just a little bit of syrup" upon seeing the officers, the suspicions were reasonably heightened that defendant was engaged in criminal activity. Because of this now heightened suspicion, Wright took the bottle and "determined that it contained cough syrup based on the smell and thickness of the liquid." Wright saw that someone scratched the label off the bottle, and after

A-0962-19

defendant was asked, defendant admitted he did not have a prescription for the cough syrup. This all combined to create probable cause to arrest defendant. From there, the judge found that the searches of defendant's person and backpack were lawful searches incident to arrest.

Defendant essentially argues that because he did not immediately appear to be carrying cough syrup that clearly required a prescription there was no probable cause to arrest him after the investigatory stop. But this ignores the totality of the situation. The judge determined that because immediately after the stop defendant said he was drinking "syrup" and the similarity to State v. Waltz, 61 N.J. 83 (1972), there were grounds to suspect further criminal conduct. In Waltz, our Court held that although a medicine bottle might not ordinarily contain illicit drugs, it is reasonable for an officer to see a medicine bottle and have probable cause to believe there are illicit drugs contained therein. Id. at 88. There is sufficient credible evidence to support the motion judge's holding of probable cause. State v. Handy, 206 N.J. 39, 44 (2011) (quoting Elders, 192 N.J. at 243) (quotations omitted).

Finally, under State v. Dangerfield, 171 N.J. 446 (2002), the officers were well within their discretion to arrest defendant versus issuing him a summons. In Dangerfield, our Court recognized that while there is a preference for the

11

issuances of citations and summonses, officers still had discretion to choose between a citation and a custodial arrest. Id. at 458. "[W]e do not disturb the authority of the police to arrest for disorderly and petty disorderly persons offenses that occurred in their presence." Id. at 460. As we clarified in State v. Daniels, if the arrest is not pretextual, there is not a bright-line limit to the extent of a search incident to that arrest. 393 N.J. Super. 476, 491 (App. Div. 2007). For this reason, the officers were justified in arresting defendant.

II.

We reject defendant's argument that the sentencing judge imposed an excessive sentence of eight years in prison with four years of parole ineligibility. We conclude the judge gave sufficient reasons for her findings of aggravating and non-existing mitigating factors. And—contrary to defendant's contention— we see no basis that the judge incorrectly thought she was bound by the "escalating plea offers."

We review a sentencing court's imposition of sentence for abuse of discretion. State v. Jones, 232 N.J. 308, 318 (2018). And we do so "in accordance with a deferential standard." State v. Trinidad, 241 N.J. 425, 453 (2020) (quoting State v. Fuentes, 217 N.J. 57, 70 (2014)). We ordinarily defer to the sentencing judge's factual findings; we do not "second-guess" them. State

12

v. Case, 220 N.J. 49, 65 (2014). Under this standard, we affirm the sentence "unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). The standard also applies to "sentences that result from guilty pleas, including those guilty pleas that are entered as part of a plea agreement." State v. Sainz, 107 N.J. 283, 292 (1987).

Defendant had an extensive criminal history. He had five juvenile adjudications, twenty-six adult arrests, five prior indictable convictions, ten prior disorderly persons convictions, and one ordinance violation. Defendant served one prior prison term.

The judge found aggravating factor three, N.J.S.A. 2C:44-1(a)(3) (the risk that defendant will commit another offense); aggravating factor six, N.J.S.A. 2C:44-1(a)(6) (the extent of defendant's prior criminal record and the seriousness of the offenses of which defendant has been convicted); and aggravating factor nine, N.J.S.A. 2C:44-1(a)(9) (the need for deterring defendant and others from violating the law). She found no mitigating factors.

13

Applying our deferential standard of review, Case, 220 N.J. at 65, we discern no basis to disturb the judge's weighing of the aggravating factors, or her imposition of sentence.

Although the State previously offered defendant a seven with forty-two, defendant rejected the offer knowing full well that in the future the State's offer would be "off the table." At sentencing, defendant admitted that although he wanted the earlier offer, he was willing to accept the eight with a four. And that is exactly what the judge imposed.

Defendant argues that the judge improperly considered the Attorney General's escalating plea bargain policy. Under the Attorney General's guidelines, a County Prosecutor's Office must strictly "provide for a longer sentence if the defendant pleads guilty after indictment to account for the additional investment of resources to prosecute the case and the unwillingness of the defendant to accept responsibility in a timely fashion." Attorney General Law Enforcement Directive No. 2016-6 v3.0, "Modification of Directive Establishing Interim Policies, Practices, and Procedures to Implement Criminal Justice Reform Pursuant to P.L. 20154, c. 31" (Sept. 27, 2017). The judge was not indicating that she was bound by this policy in her sentencing but rather was informing defendant why the initial seven-year plea was "off the table."

14                                                          A-0962-19

Accordingly, the judge did not abuse her discretion, and defendant's sentence is not manifestly excessive.

To the extent that we have not addressed defendant's remaining arguments, we conclude that they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0962-19